WILLIAM W. OXLEY, SBN 136793
ZOE M. STEINBERG, SBN 324324
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859
Emails:     *woxley@bakerlaw.com*
            *zsteinberg@bakerlaw.com*

SASHE D. DIMITROFF, TX BN 00783970
*(Pro Hac Vice Pending)*
ALEXANDRA TRUJILLO, TX BN 24110452
*(Pro Hac Vice Pending)*
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone:  713.751.1600
Facsimile:  713.751.1717
Emails:     *sdimitroff@bakerlaw.com*
            *atrujillo@bakerlaw.com*

*Attorneys for Defendant*
PACIFIC COAST ENERGY COMPANY, L.P.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERGREEN CAPITAL MANAGEMENT LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR PACIFIC COAST OIL TRUST and PACIFIC COAST ENERGY COMPANY, L.P.,<br><br>          Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>**CLASS ACTION**<br><br>*[Filed concurrently with Certification and Notice of Interested Parties; and Civil Cover Sheet]*<br><br>Removal Filed: August 20, 2020 |

Baker & Hostetler llp
Attorneys at Law
Los Angeles

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Pacific Coast Energy Company, L.P. ("PCEC") removes the class action filed by Evergreen Capital Management, LLC ("Plaintiff") in the Superior Court of the State of California, in and for the County of Los Angeles, and captioned Case No. 20STCV26290, to the United States District Court for the Central District of California.

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. §1332,[1] and removal is proper under 28 U.S.C. §§ 1441 and 1446, because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d) and 1453.

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## THE ACTION & TIMELINESS OF REMOVAL
## PROCEDURAL BACKGROUND

3.      On July 8, 2020, Plaintiff, purportedly on behalf of itself and all others similarly situated, filed a class action complaint against PCEC and The Bank of New York Mellon Trust Company, N.A. (the "Trustee"), as Trustee for the Pacific Coast Oil Trust, in the Superior Court of the State of California, in and for the County of Los Angeles, Case No. 20STCV26290 (the "State Court Action").

4.      On July 21, 2020, PCEC was served with a copy of the Summons and Complaint.

---

[1] Defendant PCEC reserves its rights to challenge subject matter jurisdiction if necessary.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5.     Pursuant to 28 U.S.C. § 1446(b), this removal is timely because PCEC filed this removal within 30 days of its receipt of a copy of the Summons and Complaint in the State Court Action.

6.     Exhibit "A" constitutes all process, pleadings, and orders served on PCEC in the State Court Action.

## CAFA JURISDICTION

7.     Basis of Original Jurisdiction.  This Court has original jurisdiction of this action under CAFA.  28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction of a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million.  Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

8.     As set forth below, pursuant to 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1453, PCEC may remove the State Court Action to federal court under CAFA because: (i) the amount in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (ii) this action is pled as a class action and involves more than one hundred (100) putative class members; and (iii) members of the putative class are citizens of a state different from PCEC.

## DIVERSITY OF CITIZENSHIP

9.     Plaintiff's Citizenship.  PCEC is informed that Plaintiff was, at the time of the filing of the State Court Action, and still is, a resident of the State of Washington.  For purposes of minimal diversity under CAFA, an unincorporated association – plaintiff or defendant – is a citizen of the state under whose laws it was organized and where it has its principal place of business. *See* 28 U.S.C. § 1332(d)(10); *see Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010) (the only federal circuit to expressly resolve the question has held that a limited liability company is an "unincorporated association" for CAFA purposes);

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

*see also Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (adopting the holding of *Ferrell* and treating an LLC as an unincorporated association under CAFA). The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id.* "The public often (though not always) considers it the corporation's main place of business." *Id.* at 1193.

10.    Plaintiff is a limited liability company organized under the laws of the State of Washington. Its principal place of business is in Bellevue, Washington, specifically at 10050 NE 8th Street, Suite 950, Bellevue, WA 98004. Accordingly, Plaintiff is a citizen of the State of Washington.

11.    Pacific Coast Energy Company, L.P.'s Citizenship.  PCEC is a citizen of the states of Delaware and California. Again, pursuant to 28 U.S.C. § 1332(d)(10), an unincorporated association – such as a limited partnership – is a citizen of the state under whose laws it was organized and where it had its principal place of business. *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032, n. 13 (9th Cir. 2009) (applying 28 U.S.C. § 1332(d)(10) to a limited partnership).

12.    At the time the State Court Action was commenced, PCEC was, and as of the date of filing of this Notice still is, a limited partnership formed in under the laws of the State of Delaware.  Pursuant to the *Hertz* nerve center test, PCEC has its principal place of business in California.  PCEC's headquarters are located in Orcutt, California, specifically at 1555 Orcutt Hill Road, Orcutt, CA 93455. Accordingly, PCEC is a citizen of Delaware and California.

13.    The Bank of New York Mellon Trust Company, N.A.'s Citizenship. Trustee is a citizen of the state of California. A national bank, like Trustee, is a "corporate entit[y] chartered not by any State, but by the Comptroller of the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Currency of the U.S. Treasury." *Rouse v. Wachovia Mortg.*, FSB, 747 F.3d 707, 709 (9th Cir. 2014). A national bank "is a citizen only of the state in which its main office is located." *Id.* at 715. At the time the State Court Action was commenced, Trustee's main office was, and as of the date of filing this Notice still is, located in California.

14.  Minimal Diversity.  This case satisfies the minimal diversity of citizenship required by CAFA because Plaintiff (who is a member of the putative class) is a citizen of the State of Washington, and PCEC is a citizen of Delaware or California. *See* 28 U.S.C. § 1332(d)(2). Removal is permitted in CAFA cases without regard to whether any defendant is a local citizen (*i.e.* the "forum defendant" exception is inapplicable). *See* 28 U.S.C. § 1453(b).

15.  Size of the Putative Class.  Plaintiff filed the State Court Action as a class action.  Plaintiff defines the putative class as consisting of "all persons or entities that have held Trust Units at any time between September 3, 2019 and July 7, 2020." (Complaint ¶ 77).  Between September 3, 2019 and the present, no less than an estimated 1000+ individuals and 15 institutional entities held Trust Units in the Pacific Coast Oil Trust.[2]  Therefore, the proposed putative class size meets the statutory minimum of at least 100.

## AMOUNT IN CONTROVERSY UNDER CAFA

16.  Removal is appropriate when it is more likely than not that the amount is controversy exceeds the jurisdictional requirement, which in this case is $5,000,000 in the aggregate. *See, e.g.*, *Cohn v. PetSmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002).

17.  Plaintiff's Complaint asserts causes of action for alleged: (1) breach of the Trust Agreement (as against the Trustee), and (2) breach of the implied covenant of good faith and fair dealing in the Trust Agreement (as against PCEC).

---

[2] Plaintiff further pleads that it believes "there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent…" (Complaint ¶ 79).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(Complaint ¶¶ 83-90).  Plaintiff's Prayer for Relief seeks an award of compensatory and consequential damages, prejudgment and post-judgment interest, attorneys' fees, expert witness fees, other costs and disbursements, and such other and further relief as the Court deems just and proper. (*See* Complaint, Prayer for Relief).

18.   Amount in Controversy.  Without conceding that Plaintiff or the purported class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action, exceeds $5,000,000, exclusive of interest and costs. Notably, the claims of individual class members may be aggregated when determining whether CAFA's $5,000,000 jurisdictional threshold is met. *See* 28 U.S.C. § 1332(d)(6). Again, this Notice does not concede and should not be construed as evidence that PCEC or the Trustee violated the legal rights of Plaintiff or any members of Plaintiff's purported class.  The argument and the calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice.

19.   Claim No. 1: Breach of the Trust Agreement.  Plaintiff's first cause of action for breach of the Trust Agreement, as against the Trustee, alleges that the Trustee failed to take "first and quick action" in response to the "unsupported and misleading" asset retirement obligation ("ARO") calculation submitted by PCEC that resulted in limited or minimal Trust Unit monthly distributions. (*See id*. ¶ 85). Plaintiff further alleges that, as a result of this failure, Trustee has caused or contributed to (i) no Trust Unit distributions for at least the last nine months, and (ii) a collapse in the Trust Unit trading price on the New York Stock Exchange (NYSE). (*See id*. ¶ 86.)

20.   Claim No. 2: Breach of the Implied Duty of Good Faith and Fair Dealing.  Plaintiff's second cause of action for breach of the implied covenant of good faith and faith dealing, as against PCEC specifically, alleges that PCEC acted in bad faith and/or with gross negligence by giving misleading projections and disclosing and deducting "unsupported" ARO estimates from the Trust Unit

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

distributions (Complaint ¶¶ 88-89). Plaintiff further alleges that, as a result of these acts, PCEC prevented the Trust Unit Holders "from receiving distributions and … [caused] the Trust Unit trading value to decline precipitously." (Complaint ¶ 90).

21.     <u>Total Amount in Controversy for Two Causes of Action.</u> Based solely on the two causes of action considered above and Plaintiff's allegations, the estimated class-wide amount in controversy is approximately **$67,640,000**. This showing as to the amount in controversy satisfies the standard for removal. "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014).

22.     This estimate is calculated based on the assessing the cumulative decrease in the Trust Unit price that Plaintiff alleges was caused by Defendants' wrongdoing.[3] During the relevant period of September 3, 2019 to the present, there were approximately 38 million Trust Units receiving distributions. The price per unit on the New York Stock Exchange was $2.12 per Trust Unit on September 3, 2019, and $0.34 per Trust Unit as of the date of PCEC's receipt of the Summons and Complaint on July 21, 2020.[4] Multiplying the difference in price by the total number of Trust Units, accordingly to Plaintiff's allegations the amount in controversy for this claim would be approximately **$67,640,000** ($1.78 decrease in Trust Unit Price x 38 million Trust Units).

## ATTORNEY'S FEES

23.     When the underlying substantive law provides for the award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

---

[3] The estimated amount in controversy could alternatively be calculated by reviewing and taking the sum of the allegedly improperly withheld distribution amounts to the Trust during the relevant time period related to the ARO calculation.
[4] As of the date of this filing, the Trust Unit price is $0.3525. On average, over the last month, the Trust Unit price has averaged $0.36.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Because PCEC has established that the $5,000,000 CAFA threshold is met considering the two causes of action, it does not assign in this Notice any amount to Plaintiff's request for attorneys' fees.  Should there be any doubt as to whether PCEC has demonstrated that the amount in controversy under the two causes of PCEC examined above exceeds $5,000,000, however, Plaintiff's request for attorneys' fees should be included in analyzing the amount in controversy.

## JOINDER AND CONSENT TO REMOVAL

24.     Pursuant to 28 U.S.C. § 1446, Defendant The Bank of New York Mellon Trust Company, N.A., as Trustee for the Pacific Coast Oil Trust, consented to the removal of this case to this Court.

## NOTICE OF PARTY WITH FINANCIAL INTEREST

25.     Pursuant to Local Rule 7.1-1, a Certification and Notice of Interested Parties is being filed concurrently with this Notice of Removal.

## NOTICE

26.     As required by 28 U.S.C. § 1446(d), PCEC is providing written notice of the filing of this Notice of Removal to Plaintiff, and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, in and for the County of Los Angeles.

Dated:  August 20, 2020                     Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:     */s/ William W. Oxley*
        William W. Oxley
        Zoe Steinberg
        Sashe D. Dimitroff
        Alexandra Trujillo

*Attorneys for Defendant*
PACIFIC COAST ENERGY
COMPANY, L.P.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

 **CT Corporation**

**Service of Process
Transmittal**
07/21/2020
CT Log Number 537973525

TO:     PETER SINGH
        Pacific Coast Energy Company
        2000 TONNER CANYON RD
        BREA, CA 92821-2659

RE:     **Process Served in California**

FOR:    Pacific Coast Energy Company LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | EVERGREEN CAPITAL MANAGEMENT LLC, ETC., PLTF. vs. THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., ETC. AND PACIFIC COAST ENERGY COMPANY LP, DFTS. |
| **DOCUMENT(S) SERVED:** | . |
| **COURT/AGENCY:** | None Specified<br>Case # 20STCV26290 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/21/2020 at 14:43 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **REMARKS:** | The document(s) received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780115355851 |
| | Image SOP |
| | Email Notification,  PETER SINGH  peter.singh@bridgeenergyllc.com |
| | Email Notification,  DAVID CHANDLER  david.chandler@bridgeenergyllc.com |
| | Email Notification,  Robert Attai  rattai@bhfs.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>208 LaSalle Ave<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-539-8692<br>CorporationTeam@wolterskluwer.com |

Page 1 of  1 / JS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| **Date:** | Tue, Jul 21, 2020 |
| **Server Name:** | Janis Dingman |
| **Location:** | Penryn, CA-LA |

| | |
|---|---|
| Entity Served | PACIFIC COAST ENERGY COMPANY LP |
| Agent Name | C T CORPORATION SYSTEM (C0168406) |
| Case Number | 20STCV26290 |
| Jurisdiction | CA-LA |

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**COPY**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**JUL 08 2020**

Sherri R. Carter, Executive Officer/Clerk of Court

By: Kristina Vargas, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE BANK OF NEW YORK MELLON TRUST COMPANY., N.A. AS TRUSTEE FOR PACIFIC COAST OIL TRUST; and PACIFIC COAST ENERGY COMPANY LP

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EVERGREEN CAPITAL MANAGEMENT LLC , Individually and on Behalf of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse, 111 N. Hill St., Los Angeles, CA 90012

**CASE NUMBER:** *(Número del Caso):*
**20STCV26290**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, Scott+Scott Attorneys at Law LLP, 600 W. Broadway, Suite 3300, San Diego, California, 619-233-4565

| DATE: **JUL 0 8 2020** | | |
|---|---|---|
| *(Fecha)* | **SHERRI R. CARTER** Clerk, by | **Kristina Vargas** , Deputy |
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Pacific Coast Energy Company LP

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date)* 7/21/20

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**COPY**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 08 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By: Kristina Vargas, Deputy

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
JOHN T. JASNOCH (281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619/233-4565
619/233-0508 (fax)
jjasnoch@scott-scott.com

*Counsel for Plaintiff Evergreen Capital Management LLC*

[Additional counsel on signature page.]

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| EVERGREEN CAPITAL MANAGEMENT LLC, Individually and on Behalf of All Others Similarly Situated, | Case No. **20STCV26290** |
| Plaintiff, | |
| vs. | **VERIFIED CLASS ACTION COMPLAINT** |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR PACIFIC COAST OIL TRUST and PACIFIC COAST ENERGY COMPANY LP, | |
| Defendants. | JURY TRIAL DEMANDED |

VERIFIED CLASS ACTION COMPLAINT

- 12 -

1    Plaintiff Evergreen Capital Management LLC ("Evergreen" or "Plaintiff"), individually and on

2    behalf of all others similarly situated, by Plaintiff's undersigned attorneys, brings this action (the

3    "Action") against the Bank of New York Mellon Trust Company, N.A. as Trustee for the Pacific Coast

4    Oil Trust (the "Trustee" for the "Trust") and Pacific Coast Energy Company LP ("PCEC") (collectively,

5    "Defendants"), and alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's

6    own acts, and upon information and belief, as to all other matters, based on investigations conducted by

7    Plaintiff and by and through Plaintiff's attorneys, which includes, among other things, a review of U.S.

8    Securities and Exchange Commission ("SEC") filings made by the Trust, and litigation involving some

9    of the parties in this action.  Plaintiff believes that substantial additional evidentiary support will exist for

10   the allegations set forth herein after being given the opportunity to conduct reasonable discovery.

11   <center>**NATURE AND SUMMARY OF THE ACTION**</center>

12   1.    The Trust is a passive investment vehicle which was formed in 2012 solely for the benefit

13   of the Trust Unitholders, such as Plaintiff and the Class.  The Trust owns the right to the majority of

14   profits from certain oilfields located in California (the "Trust Profit Interest").  PCEC operates those oil

15   fields and also provides operational and administrative services to the Trust.  There is a conveyance

16   agreement between PCEC and the Trustee that governs the calculation of cash payments from the revenue

17   generated by the oil fields to the Trust, which are then paid out as distributions to the Trust Unitholders.

18   The Trust is subject to dissolution if it receives less than $2 million of distributable income for two

19   consecutive years.

20   2.    This structure served Trust Unitholders well.  From March 2017 through September 2019,

21   the Trust paid distributions to Trust Unitholders for every month except for one.  But then in September

22   2019, Scott Y. Wood ("Wood") took over PCEC, and the Trust Unitholders began to suffer immediate

23   harm.

24   3.    First, PCEC slowed the flow of profits being sent to the Trust, while continuing to

25   maintain its own monthly service fees, so that the Trust Unitholders have (except with one token

26   distribution in January 2020) no longer received distributions since September 2019.  The distribution

27   cut-off in September 2019 was especially egregious because it was based on profits from August 2019,

28   when Wood did not yet formally take over PCEC.  This suggests that Wood meddled with the

<center>1</center>

distributions based on profits that were produced before he took control of PCEC, which were rightfully owed to the Trust Unitholders.

4.     Second, PCEC stated that, in calculating the profits generated from the oilfields owned that the Trust is entitled to, it would massively increase the estimated abandonment and plugging costs to calculate its asset retirement obligations ("ARO").   The increase was massive and without basis. Abandonment and plugging costs should be assessed against revenue over the lifetime of a well, not pulled forward in their entirety to offset present revenue.  The treatment sought by PCEC does not comply with GAAP or industry practice.  Furthermore, PCEC is violating the conveyance agreement with the Trust by calculating the profits due to the Trust in an unsupportable manner that unfairly deprives the Trust and Trust Unitholders of their rightful share of the profits, and in so acting is also violating its implied obligation to act in good faith under the Trust Agreement.

5.     This news led to more than a 75% decline in the trading value of Trust Units, which had already declined by approximately 50% since the news from two months earlier that Wood gained control of PCEC.  The New York Stock Exchange ("NYSE") gave the Trust notice that it no longer complied with NYSE listing standards, and would have only a limited period to come back into compliance or face delisting.  Compliance would require that the Trade Units have an average trading price of $1 per unit for a 30-day period before the deadline for delisting is reached.  Since the PCEC cost estimates were publicly disclosed, the Trade Units have never reached as high as $1 per unit.  After already receiving an extension, the Trust has less than two months – until August 5, 2020 – to come into compliance.

6.     The decline in the trading value of the Trust Units *cannot* be attributed to general market conditions.  Instead, the decline is primarily due to PCEC's misconduct.  The oil wells from which the Trust drew revenue generally sells at the Midway Sunset and Buena Vista Hills crude oil prices, which trade at a premium to West Texas Intermediate ("WTI") (the most frequently used reference for U.S. oil prices).  The two-year chart below shows that until Wood took control of PCEC, the Trust Units' trading prices were aligned with those oil prices.  But after Wood took control of PCEC and caused it to engage in improper withholdings and accounting, the Trust Units' trading prices plummeted even when the oil market remained healthy, and then when the oil market was troubled, the Trust Unit values were depressed even further.



7. The Trust's difficulties were compounded by the resignation of its auditor, PricewaterhouseCoopers ("PwC"). Not having an auditor meant that the Trust could not file its quarterly or annual financial reports, and the Trust does not expect to be in a position to file until the end of June and July 2020.

8. The evidence demonstrates that PCEC's misleading and unsupported cost estimates were made at the instigation of Wood as part of a deliberate scheme to starve the Trust of revenue, which to date has caused and will continue to cause, direct damage to Trust Unitholders through the decline in the trading value of Trust Units and through the loss of distributions. Furthermore, the Trust Unitholders will be further harmed if the Trust Units are delisted from the NYSE, because delisting could lead to a permanent crippling of liquidity for Trust Unitholders. PCEC's actions that cripple the Trust's revenue sources also threaten to lead to irreparable harm to Trust Unitholders through the dissolution of the Trust.

9. Trust Unitholders are further harmed by the gross negligence evidenced through the Trustee's passive response to the above-mentioned events. Plaintiff's counsel wrote to or spoke with the

3

Trustee or its counsel several times between December 2019 to April 2020 to put them on notice of the above-mentioned problems.  In its April 2020 letter to the Trustee's counsel, Plaintiff's counsel expressed that given the looming delisting deadline, the Trustee must take concrete action but has not yet received a response.

10.     Plaintiff now brings this suit on behalf of itself and similarly situated Trust Unitholders to prevent irreparable harm and to seek damages for breach of the Trust Agreement as to the Trustee and PCEC.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, §10.

12.     This Court has personal jurisdiction under California Code of Civil Procedure §410.10 because Defendants or their agents either reside in or conduct business in California, including that related to the underlying misconduct at issue in this action.

13.     Specifically, the Court has personal jurisdiction over PCEC because it is headquartered in Los Angeles, California, and manages extensive property in Santa Barbara and other locations in California.

14.     Because the Trust's sole source of revenues is derived from properties that are primarily located in California, and the Trustee must have regular contact with PCEC over the regular course of business, the Trustee projects itself into Los Angeles, California, through its contact with PCEC, including through contact with PCEC regarding ARO estimates directly at issue in this litigation, and therefore, subjects itself to personal jurisdiction in California.

15.     This Court is a proper venue under C.C.P. §395 because at least one defendant, PCEC, is headquartered in, and therefore resides in, Los Angeles, California.

## PARTIES

**A.     Plaintiff**

16.     Plaintiff Evergreen Capital Management LLC has been a beneficial owner of Trust Units since the initial public offering in 2012 and has continuously held Trust Units since then.

**B.      Defendants**

17.     Defendant The Bank of New York Mellon Trust Company, N.A. as Trustee for Pacific Coast Oil Trust is the trustee for the Trust.

18.     Defendant Pacific Coast Energy Company LP is the trustor for and provides operational and administrative services to the Trust.  PCEC is headquartered in Los Angeles, California, and it manages oil wells in the Santa Barbara area of California.

19.     Defendants the Trustee and PCEC are collectively referred to herein as the "Defendants."

**C.      Relevant Non-Parties**

20.     The Trust is a passive investment vehicle whose sole purpose is to receive the Trust Profit Interest from PCEC and to distribute those revenues to the Trust Unitholders.  The Trust gives Houston, Texas as its headquarters, likely because a Houston executive of the Trustee is designated to handle the Trustee's responsibilities for PCEC.  But as its name indicates, the Trust's primary economic interests are profit interests in California oil wells.  The Trust Estate is divided into Trust Units, which trade on the NYSE under the ticker symbol, ROYT.  The Trust Units were originally held by PCEC, which then sold all of its units to public investors through initial and secondary public offerings from 2012 through 2014, and now public investors constitute all Trust Unitholders.

21.     Scott Y. Wood ("Wood") is the chief executive officer of PCEC.

22.     Robert Foss ("Foss") is the chief financial officer of PCEC.

23.     Philip Brown ("Brown") is the senior vice president of operations of PCEC.

**THE RELATIONSHIPS BETWEEN THE TRUST, TRUSTEE, AND TRUSTOR**

24.     PCEC spun off the Trust in 2012.  Under the terms of the Trust Agreement, PCEC received 38 million Trust Units, and in exchange, the Trust would have the right to receive a percentage of profits from oil well properties that PCEC operates.  PCEC sold 18 million of its units in an initial public offering in 2012 for approximately $347 million.  About a year later, PCEC sold most of its remaining Trust Units in a secondary offering for approximately $320 million.  Finally, in June 2014, PCEC distributed its remaining 3.87 million Trust Units to its management and owners, who proceeded to sell 2.65 million units in another secondary offering.

25.    The Trust has no operating business of its own. Nor does the Trust have any right to acquire any property of its own. Rather, it is an investment vehicle where its sole purpose for existing is to distribute to the Trust Unitholders the revenue it receives from a designated list of properties managed by PCEC.

26.    The Trust's 2018 annual report describes the business as follows: "The Trust has no employees. The business and affairs of the Trust are administered by the Trustee. The Trust's purpose is to hold the Conveyed Interests, to distribute to the Trust unitholders cash that the Trust receives in respect of the Conveyed Interests and the Trust Units. The Trust does not conduct any operations or activities. . . . The Trust derives all or substantially all of its income and cash flow from the Conveyed Interests."

27.    Although the Trustee's role is to manage the Trust, the Trustee does not have a staff to actively operate the Trust. Rather, the Trustee pays the Trustor, PCEC, an annual fee of approximately $1.1 million to provide administrative and operational services. The Trustee collects fees of approximately $200,000 per year.

28.    PCEC, as the Trustor, operates oil and gas properties, primarily in Santa Barbara, California. PCEC itself is headquartered in Los Angeles, California. PCEC is structured as a limited partnership, with a general partner, Pacific Coast Energy Holdings LLC ("PCEH"), which controls the management of PCEC. PCEC, in addition, extends a $1 million credit line to the Trust.

29.    The Trust has no directors or officers or any employees. The Trustee, similarly, does not utilize a board of directors or board of trustees in its capacity as the trustee of the Trust.

## DEFENDANTS' DUTIES

30.    Under the Delaware Statutory Trust Act ("DSTA"), the duties of the parties to the Trust (the beneficial owners, the trustee, and trustor) are those under the common law of trusts, except to the extent that these duties are modified or eliminated by the "governing instrument." The DSTA provides that "[t]o the extent that, at law or in equity, a trustee or beneficial owner or other person has duties (including fiduciary duties) to a statutory trust or to another trustee or beneficial owner or to another person that is a party to or is otherwise bound by a governing instrument, the trustee's or beneficial owner's or other person's duties may be expanded or restricted or eliminated by the provisions in the

governing instrument; provided, that the governing instrument may not eliminate the implied contractual covenant of good faith and fair dealing." 12 Del. C. §3806(c). The governing instrument "[m]ay provide rights to any person, including a person who is not a party to the governing instrument[.]" 12 Del. C. §3806(b)(8).

31.     The governing instrument for the Trust is the Amended and Restated Trust Agreement of Pacific Coast Oil Trust Among Pacific Coast Energy Company LP and Wilmington Trust, National Association and The Bank of New York Mellon Trust Company, N.A., dated as of: May 8, 2012 (the "Trust Agreement"). Defendants the Trustee and PCEC are parties to the Trust Agreement.

32.     The Trust Unitholders, though not directly parties to the contract, are third-party beneficiaries or are directly related to the Trust Agreement with standing to sue because the Trust is established expressly for their benefit. The Trust Agreement states, "The Trustee declares that it shall hold the Trust Estate in trust for the benefit of the Trust Unitholders, upon the terms and conditions set forth in this Agreement. *As set forth above and amplified herein, the Trust is intended to be a passive entity limited to the receipt of revenues attributable to the Conveyed Interests and the distribution of such revenues, after payment of or provision for Trust expenses and liabilities, to the Trust Unitholders*. It is not the intention of the parties hereto to create, and nothing in this Agreement shall be construed as creating, for any purpose, a partnership, joint venture, joint stock company or similar association[.]" Trust Agreement §2.04 [emphasis added].

33.     Furthermore, Trust Unitholders are given specific rights under the Trust Agreement. For example, the Trustee needs "the express approval of Trust Unitholders of record holding at least 75% of the then outstanding Trust Units" to terminate the Trust Agreement or Conveyance. *Id.* at §3.01(a). Similarly, with limited exceptions, the Trustee may not "sell or dispose of . . . all or any part of the Trust Estate" without "approv[al] by the Trust Unitholders of record holding at least 75% of the then outstanding Trust Units[.]" *Id.* at §3.02(b).

34.     Article IV of the Trust Agreement further outlines the rights of the Trust Unitholders, stating, "Each Trust Unit shall represent pro rata undivided ownership of the Beneficial Interest and shall entitle its holder to participate pro rata in the rights and benefits of Trust Unitholders under this Agreement. A Trust Unitholder (whether by assignment or otherwise) shall take and hold each Trust

7

Unit subject to all the terms and provisions of this Agreement and the Conveyance. . . . [T]he Trust Unitholders shall be entitled, to the fullest extent permitted by law, to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware." *Id.* at §4.02.

35.    The Trust Agreement does not bar Trust Unitholders' right to prosecute ***direct*** claims on their own and other Unitholders' behalf, because those claims belong to the unitholders personally.

36.    Direct claims are the ones where the damages are suffered by the unitholders directly and where the unitholders receive the benefit of recovery. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).

37.    Furthermore, the Delaware Court of Chancery has held that "direct claims exist when the entity at issue is a mere pass through entity and the benefits flow directly back to the investors." *Sehoy Energy LP v. Haven Real Estate Group, LLC*, C.A. No. 12387, 2017 WL 1380619, at *8 (Del. Ch. Apr. 17, 2017). Because the Trust is a passive vehicle established solely to pass revenues from the Trust Profit Interest to Trust Unitholders, the Trust Unitholders have standing to assert direct claims for acts that injure them, such as a loss in value to the Trust Units or loss of distributions. Similarly, the Delaware Court of Chancery held that shareholders in a trust who are entitled to distribution of trust funds may assert direct contractual claims related to claims of improper payments made from those funds. *Ruffalo v. Transtech Serv. Partners, Inc.*, C.A. No. 5039, 2010 WL 3307487, at *9, *15 (Del. Ch. Aug. 23, 2010). Furthermore, a party to a contract has a right to sue directly for enforcement of its contract rights. *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179 (Del. 2015).

38.    Thus, the Trust Unitholders retain direct claims for breaches of the Trust Agreement and tortious interference with the Trust Agreement.

39.    The Trust and Trust Agreement "shall be governed by the laws of the State of Delaware (without regard to the conflict of laws principles thereof) in effect at any applicable time in all matters, including the validity, construction and administration of this Agreement and the Trust, the enforceability of the provisions of this Agreement, all rights and remedies hereunder, and the services of the Delaware Trustee and Trustee hereunder. Furthermore, except as otherwise provided in this Agreement, the rights, powers, duties and liabilities of the Delaware Trustee, the Trustee and the Trust Unitholders shall be as

provided under the [Delaware Statutory] Trust Act and other applicable laws of the State of Delaware[.]"
*Id.* at §12.07.

40.     The Trust Agreement also states: "Neither PCEC nor any of its affiliates shall be a fiduciary with respect to the Trust or the Trust Unitholders.  To the extent that, at law or in equity, PCEC or its Affiliates have duties (including fiduciary duties) and liabilities relating thereto to the Trust or to the Trust Unitholders, such duties and liabilities are hereby eliminated and waived to the fullest extent permitted by law." *Id.* at §12.11.

41.     However, despite the disclaimer, under the terms of the DSTA, as described above, PCEC continues to have a statutory obligation to adhere to the "implied covenant of good faith and fair dealing." As the Delaware Supreme Court recently explained in a case involving an oil pipeline company: "The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated.  It applies when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017). "[W]here . . . the express terms of the partnership agreement naturally imply certain corresponding conditions, unitholders are entitled to have those terms enforced according to the reasonable expectations of the parties to the agreement . . . .  The implied covenant is well-suited to imply contractual terms that are so obvious that the drafter would not have needed to include the conditions as express terms in the agreement." *Id.* at 361.

42.     Recent Delaware cases have applied the implied covenant claim to several situations in the oil and gas industry.  These have included finding breach of the implied covenant where a company has made false disclosures, in *Regency GP,* 155 A.3d at 367, and making representations that caused public unit prices to drop in value, thereby manipulating the prices to enable a party to exercise an option to buy up units cheaply. *See In re CVR Refining, LP Unitholder Litig.*, C.A. No. 2019-0062, 2020 WL 506680 (Del. Ch. Jan. 31, 2020); *Bandera Master Fund LP v. Boardwalk Pipeline Parttners LP*, C.A. No. 2018-0372, 2019 WL 4927053 (Del. Ch. Oct. 7, 2019).

## SUBSTANTIVE ALLEGATIONS

**A.    Wood's History of Misconduct Proves that He Controls Companies for Personal Gain**

43.    Wood formerly controlled another oil and gas company based in Texas called ERG Resources LLC ("ERG"). ERG filed for bankruptcy in April 2015. About a year later, the Bankruptcy Trustee filed a suit against Wood alleging breaches of fiduciary duty. The Bankruptcy Trustee's lawsuit alleges that "Wood dominated and controlled the Debtors and operated them by his own rules, and used the Debtors' assets to fund his lavish lifestyle." *Searcy v. Wood*, Adv. No. 15-31858, Complaint (Bk. N.D. Tex. April 25, 2016).

44.    Specifically, the Bankruptcy Trustee alleged that "during the two years preceding bankruptcy, Wood caused the Debtors to (a) pay him over $25 million in distributions and salary; (b) spend more than $5 million to sponsor and fund his polo team. . .; (c) pay approximately $700,000 for . . . maintenance expenses for his homes; and (d) pay more than $2.35 million to his divorce lawyers and other professionals engaged by him during his matrimonial proceedings."

45.    The Bankruptcy Trustee further emphasized, "Wood used the Debtors as his personal bank account until his resignation the day before the bankruptcy filing, taking one last check for $300,000 just before he walked out the door."

46.    The Bankruptcy Trustee alleged that based on his review of ERG's books and records, "Wood diverted more than $34,000,000 from the Debtors for his own use and benefit and for no consideration."

47.    Wood was able to use ERG as a personal piggybank because, according to the Bankruptcy Trustee, it was "solely managed by Wood" and ERG had no board of directors "to act as a check on Wood's cavalier looting of the Debtors' cash."

48.    Wood took over $15 million in distributions from ERG in the two years before the bankruptcy, and those "[d]istributions were unrelated to the Debtors' operations or profits and were simply a source of cash for Wood." He also took more than $10 million in salary for the two years before the bankruptcy filing and the salary, rather than being based on an employment agreement, appeared to be "based on nothing more than his own personal needs."

49.     Furthermore, Wood had ERG "fully fund[]" his polo playing by "creat[ing] the ERG Polo Team and siphon[ing] millions of dollars from the Debtors to sponsor the team and polo playing in general" – ultimately spending almost $6 million of ERG's money "for Wood's personal benefit without receiving any consideration [for ERG.]"

50.     Using his exorbitant distributions and salary from ERG, Wood purchased a ranch in Santa Barbara, California, and further spent $700,000 of ERG's money on maintaining this property.

51.     Wood also had ERG pay more than $2.3 million to "various professionals retained by Wood[] in connection with his divorce."

52.     The Bankruptcy Trustee settled with Wood about a year later.  But even the settlement drew an objection by a creditor, Nabors Global Holdings II, Ltd. ("Nabors"), which protested that the settlement would allow Wood to "give control of . . . litigation back to Mr. Wood" and lead to a "transfer of control of trust assets to Mr. Wood[.]"  Furthermore, Nabors protested that "[t]he bulk of the settlement consideration is a promissory note payable by Mr. Wood.  There is no evidence that Wood will have the ability – or even the motivation – to repay the note."  The Bankruptcy Trustee settled Nabors' objection by ensuring that recoveries go first to the bankruptcy trust and only the surplus would go to Wood.

**B.     PCEC, Directed by Wood, Engages in Misconduct to Destroy Trust Value**

53.     On September 3, 2019, an entity Wood controls, NewBridge Resources Pacific LLC ("NewBridge"), acquired control of PCEH, the general partner of PCEC, and therefore, Wood acquired effective control of PCEC.  Wood then became the CEO of PCEC, further cementing his control.

54.     Shortly afterward, on September 30, 2019, the Trust announced that there would be no distribution in October 2019, which was the first time since May 2018 that the Trust did not pay a distribution.  This cut-off of distributions is especially egregious because the profits that it was based on were from August 2019, which suggests that Wood meddled with distributions to the Trust Unitholders that they were rightfully owed based on profits earned before Wood took control of PCEC.  Since Wood took control of PCEC, the Trust has paid distributions only once – a token amount in January 2020.

55.     On October 10, 2019, the Trust announced that PwC had resigned as the Trust's accountant and auditor, and that PwC had informed the Trustee "that information had come to PwC's

attention that causes PwC to be unwilling to be associated with the Trust's financial statements in the future."

56.    On November 13, 2019, the Trust disclosed that PwC had informed the Trustee "that its resignation was the result of the change of ownership of PCEH." The Trust also disclosed, "The Trustee understands that Mr. Wood was affiliated with, and may have been an executive officer of, ERG Intermediate Holdings, LLC, which filed for bankruptcy protection in 2015."

57.    Also on November 13, 2019, the Trust disclosed that owing to PwC's resignation and the need for the Trust to retain a new auditor, the Trust would have to delay filing its quarterly and annual financial reports with the U.S. Securities and Exchange Commission ("SEC").

58.    On November 13, 2019, the Trust announced that PCEC gave the Trustee notice that "its current undiscounted estimate of total future amount of plugging and abandonment costs attributable to the Trust is approximately $56.7 million" and that "the amount [] PCEC has estimated appears likely to eliminate the likelihood of significant payments to the Trust under its Net Profits Interest beginning in January 2020."

59.    PCEC did not disclose the basis for its estimate.  However, as disclosed in the Trust's 2018 annual report (which includes lease operating expenses, production and other taxes, and development expenses), the Trust's total costs for that year were approximately $46 million, so PCEC's estimate for only one type of expense already exceeded the Trust's entire annual costs.

60.    PCEC's estimates violate GAAP and industry practice.  Under those standards, abandonment and plugging costs should be assessed against revenue over the lifetime of the oil wells. Instead, PCEC has improperly pulled the entirety of their costs forward to offset present revenue.

61.    Furthermore, by improperly lowering its profit calculations through improperly pulling up costs that have not been incurred, PCEC is violating the conveyance agreement with the Trust by calculating profits in a manner that fails to comport with the methodology required by the conveyance agreement.  Its improper conduct, in turn, violates its implied covenant to act in good faith under the Trust Agreement, by starving the Trust of revenue and wrongfully depriving Trust Unitholders of distributions.

<div align="center">12</div>

62.   These developments caused a nosedive in the value of the Trust Units. On September 3, 2019, the date when the Trust announced that NewBridge acquired PCEC, the Trust Units traded at $2.12 per unit. Thereafter, the units slid in value until they traded at $1.08 on November 13, 2019. But the next day, after the market took in the news that PCEC might bring up unexpectedly high plugging and abandonment costs, which would gut the Trust's revenues and potentially lead to the Trust's dissolution in two years, the trading value of the Trust Units nosedived to $0.25 per unit by the closing.

63.   Moreover, on November 27, 2019, the NYSE informed the Trust that it was out of compliance with the NYSE's listing standards and would have six months to come within compliance, which means the Trust must achieve a unit price of $1.00 on the last day of a trading month and have a 30-day average prior to that date of $1.00 per unit. The Trust disclosed recently that the NYSE-compliance deadline had been extended from May 18, 2020 to August 5, 2020. However, the unit price has not reached $1.00 since November 13, 2019, and has averaged to less than $0.50 per unit during this seven-month period.

64.   On March 4, 2020, the Trust disclosed that PCEC informed the Trust that it "intended to begin deducting its estimated ARO . . . reducing the amounts payable to the Trust under its Net Profits Interest" and that PCEC's estimate of these costs was approximately $45.7 million, lower than its initial projections, but still almost as high as the Trust's total annual costs, and still without providing a basis for this estimate. PCEC's cost estimate resulted in a "cumulative net profits deficit amount" of "approximately $25.8 million, which will be subtracted from any future net profits deficit amount until the cumulative net profits deficit . . . has been reduced to zero." Coming at a time when oil prices were collapsing owing to the COVID-19 pandemic and global politics with oil producers, PCEC's timing for deducting these costs was especially unfortunate.

65.   In the March 4, 2020 disclosure, the Trust warned:

Based on PCEC's [cost] estimate . . ., deductions related to estimated [costs] are likely to eliminate the likelihood of significant distributions to Trust unitholders for the next several years, as previously disclosed in the Trust's Current Report on Form 8-K filed on November 13, 2019.

\*\*\*

13

[T]he Trust will terminate if the annual cash distributions received by the Trust from the Net Profits Interest and Royalty Interest total less than $2.0 million for each of any two consecutive calendar years. PCEC is deducting estimated [costs], thereby reducing the amounts payable to the Trust unless significant market changes were to occur; therefore, it appears likely that total distributions to the Trust will total less than $2.0 million for each of 2020 and 2021.

66. Meanwhile, PCEC continues to reap $77,000 to $93,000 per month in management fees, which, together with the Trust's operating expenses and reduced profits owing to PCEC's high ARO deductions, have resulted in the Trust running a deficit for most of the time since Wood took over PCEC in September 2019. Thus, the Trust has been unable to issue distributions since then except for a token amount in January 2020. Moreover, as early as November 13, 2019, the Trust disclosed that the Trustee believes that it is unlikely to be able to issue any distributions in 2020 or 2021, and that if it is unable to do so, the Trust will dissolve under the terms of the Trust Agreement. Yet, despite understanding and disclosing the risk of dissolution, the Trustee continues to merely review PCEC's estimate and to date has not taken any action. The Trustee's lack of concrete action is even more concerning because it is aware of the looming NYSE delisting deadline, and knows that to meet the August 5, 2020 deadline, the Trust Unit price would have to recover in time to average $1.00 for a month before.

67. Since PCEC has begun to deduct ARO yet continues to charge its full service fee each month, the Trust's financial situation has deteriorated. The Trust has been forced to draw from a $1 million credit line from PCEC to cover its costs.

68. The Trust disclosed on May 7, 2020, that its financial situation continued to deteriorate due to PCEC's deductions for abandonment and plugging costs while still charging its full service fee. The Trust noted that approximately $751,000 remained on the $1 million line of credit from PCEC, because the Trust was once again forced to draw on it to cover its operating expenses. The Trust further disclosed, "PCEC may loan funds to the Trust necessary to pay such expenses; however, it has informed the Trustee that for the foreseeable future PCEC does not expect to loan such funds to the Trust."

69. On June 2, 2020, the Trust disclosed that PCEC continued to collect fees while deducting for abandonment and plugging costs from the profits it was supposed to send to the Trust. Thus, the

14

Trust once again had a shortfall, could not distribute distributions to Trust Unitholders, and was required to draw further down on its credit line, so that $648,000 remains. The Trust disclosed that once again, while PCEC "may loan funds to the Trust" if the line of credit is exhausted, "PCEC has informed the Trustee that for the foreseeable future PCEC does not expect to loan such funds to the Trust."

70.     The evidence shows that Wood directed the improper and misleading cost estimate by PCEC to cement a plan to starve the Trust of cash, either to siphon the cash to himself as in what he did at ERG, or so that he can purchase the Trust for himself, either due to the drastic decline in the unit trading price or through a dissolution sale in two years. Wood's history at ERG demonstrates his lack of respect for corporate formalities and his willingness to engage in misconduct. Evidence of Wood's reputation for misconduct includes the fact that PwC resigned as auditor and expressly told the Trustee its concerns were relating to the change in ownership of PCEH, *i.e.*, the fact that Wood took over. Evidence that Wood has concocted this scheme includes the fact that soon after he took control of PCEC, a formerly reliable stream of profits slowed or trickled to a stop, causing the Trust to be unable to issue distributions. Evidence for Wood's misconduct is further bolstered by the fact that shortly after PwC resigned, PCEC came up with an unsupported ARO estimate of five times its last estimate, without explanation as to the change, which shocked the market and directly led to the cratering of PCEC's Trade Unit prices. And shortly after Wood took control of PCEC, it began to starve the Trust of revenue so that the Trust could no longer issue distributions. Furthermore, after initially disclosing its unreasonably high ARO estimates in November 2019, it chose to begin to deduct those costs precisely when the oil market collapsed, thus hastening the Trust's financial collapse. Meanwhile, PCEC continued to charge the same service fees, thus forcing the Trust to draw down its line of credit. Finally, PCEC, under Wood's control, has signaled that it will not lend the Trust further funds even though PCEC controls both the revenues and the costs that the Trust incurs.

71.     As illustrated above, the deterioration in the Trust Unit values and the Trust's health can only be attributed to PCEC's misconduct. General market conditions – even when they are turbulent – cannot explain this decline. The oil that the Trust draws revenue from generally sell at the Midway Sunset and Buena Vista crude oil prices (which themselves sell at a premium to West Texas Intermediate, the measure most frequently used for U.S. oil price references). In a chart illustrating how the Trust Unit

15

traded compared to the Midwest Sunset and Buena Vista crude oil prices, the Trust Units traded in line with those prices ***until*** Wood took control of PCEC and caused it to engage in misconduct.  Since Wood took control of PCEC, the Trust Unit trading value has declined precipitously even when the market has been stable, and the Trust Unit trading value has declined by even more than the oil market when the market is turbulent.



### C.   The Trustee Negligently Conducts Slow Review and Fails to Stem the Damage

72.     From the public filings, the Trustee was on notice regarding PCEC's improper ARO accounting since November 2019.  The Trustee announced in November 2019 that it would engage its own consultant to come up with its own ARO estimates.  Yet, seven months later, the Trustee has not completed its review or taken any action whatsoever to protect the Trust or the Trust Unitholders.

73.     The Trustee is also aware that because of PCEC's improper actions, the Trust runs the danger of being delisted, having received a notice from the NYSE on November 27, 2019.  While the timeline for compliance has been extended to August 5, 2020, the August deadline is rapidly approaching.

16

VERIFIED CLASS ACTION COMPLAINT

1   Yet, the Trustee has taken no action to mitigate Wood's misconduct, which has artificially depressed the
2   Trust Unit trading price.

3       74.     Specifically, the Trustee has not sought to enjoin Wood or PCEC from deducting its
4   inflated ARO estimates from the profits it is required to send to the Trust every month. The Trustee has
5   also not sought to enjoin PCEC from making these inflated cost estimates, despite how the overhang of
6   these estimates has depressed PCEC's Trust Unit prices. Furthermore, more than seven months after
7   PCEC's improper estimate, the Trustee is still conducting a review without giving any indication as to
8   when its review might end.

9       75.     The Trustee has also not undertaken any other actions to seek to mitigate or reverse the
10  unit price decline so that it could cause the Trust to come back into compliance with NYSE listing
11  guidelines, *e.g.*, through repurchasing Trade Units or through engineering a reverse split of Trade Units.
12  Meanwhile, time is running out before the Trust can come back into compliance with NYSE listing
13  requirements.

14      76.     Furthermore, Plaintiff brought potential claims to the Trustee's notice on several
15  occasions: in a letter to the Trustee dated December 30, 2019; in email correspondence on February 14,
16  2020; in a telephonic conversation with the Trustee's counsel on March 2, 2020; and in a letter to the
17  Trustee's counsel on April 29, 2020. The April 29, 2020 letter emphasized the urgency of the matter,
18  given the pending delisting deadline. But the Trustee, either directly or through its counsel, has not
19  responded. Furthermore, the Trustee's public disclosures through the Trust's SEC filings, continue to
20  represent that it is continuing to review PCEC's calculations, without doing anything to mitigate the harm
21  PCEC has caused so far. Under these circumstances, the Trustee has acted grossly negligent, in violation
22  of its contractual duties under the Trust Agreement.

23              **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

24      77.     Plaintiff brings this action on behalf of a class consisting of all persons or entities that
25  have held Trust Units at any time between September 3, 2019 and July 7, 2020 (the "Class"). Excluded
26  from the Class are the Defendants; the officers, directors, affiliates, and subsidiaries of the Trustee and
27  PCEC, at all relevant times; counsel of record for all parties; any entity in which Defendants have or had
28

17

VERIFIED CLASS ACTION COMPLAINT

1 | a controlling interest; and the legal representatives, heirs, successors, or assigns of any such excluded
2 | person or entity.

3 |      78.    The members of the Class are so numerous that joinder of all members is impracticable.
4 | While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained
5 | through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed
6 | Class. The members of the proposed Class may be identified from records maintained by the Company
7 | or its transfer agent and may be notified of the pendency of this action by mail, using customary forms
8 | of notice that are commonly used in securities class actions.

9 |      79.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of
10 | the Class are similarly affected by Defendants' wrongful conduct.

11 |      80.    Plaintiff will fairly and adequately protect the interests of the members of the Class and
12 | has retained counsel who are competent and experienced in class and securities litigation.

13 |      81.    Common questions of law and fact exist as to all members of the Class and predominate
14 | over any questions solely affecting individual members of the Class. Among the questions of law and
15 | fact common to the Class are:

16 |         (a)    whether the Trustee's acts or omissions were grossly negligent, and therefore,
17 | violated the Trust Agreement, as alleged herein;

18 |         (b)    whether PCEC breached the implied covenant of good faith and fair dealing of the
19 | Trust Agreement by engaging in bad faith acts;

20 |         (c)    whether the Court can order specific performance by enjoining the Trustee and
21 | PCEC from engaging in acts that damage the Trust Unitholders; and

22 |         (d)    to what extent Plaintiff and the other members of the Class have sustained damages
23 | and the proper measure of such damages.

24 |      82.    A class action is superior to all other available methods for the fair and efficient
25 | adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the
26 | damages suffered by individual Class members may be relatively small, the expense and burden of
27 | individual litigation make it impossible for members of the Class to individually redress the wrongs done
28 | to them. There will be no difficulty in the management of this action as a class action.

<div align="center">18</div>

<div align="center">VERIFIED CLASS ACTION COMPLAINT</div>

**FIRST CAUSE OF ACTION**
Breach of Trust Agreement
(Against the Trustee)

83. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84. Under the Trust Agreement, the Trustee is liable for "its own fraud, gross negligence or willful misconduct."

85. The Trustee's refusal to take firm and quick action against Wood and PCEC constitutes gross negligence because a reasonable person in the Trustee's position would know that such delay would lead to damages and irreparable harm to the Trust Unitholders. First, the Trust Unitholders have not received any distributions – the primary purpose for which they invest in the Trust Units – for almost the entire nine months since PCEC was taken over by Wood. Second, PCEC's actions have led to a collapse in the Trust Unit trading price, to the point where the Trust is facing an imminent delisting from the NYSE, which will result in a liquidity crunch of Trust Unitholders. Third, the Trust has disclosed that it does not anticipate receiving enough revenue to prevent dissolution under the Trust Agreement in two years.

86. As a result of the Trustee's gross negligence, Plaintiff and other members of the Class face irreparable harm and have and will incur damages.

**SECOND CAUSE OF ACTION**
Breach of the Implied Covenant of Good Faith and Fair Dealing in the Trust Agreement
(Against PCEC)

87. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88. PCEC has breached the implied covenant of good faith and fair dealing, which under the DSTA is the one contractual condition that cannot be contracted away, through its bad faith or grossly negligent actions in disclosing and deducting unsupported and misleading ARO estimates, in violation of GAAP and industry practices. By doing so, it has reduced the revenue of the Trust, and in signaling a refusal to support the Trust despite the fact that PCEC controls both the revenues and costs of the Trust.

89. That PCEC has the duty, under the Trust Agreement, to not provide misleading projections to the Trust or to starve it of revenue in bad faith, are implied terms of the contract because counter-

19

1  parties would think not misleading the other party or intentionally causing it financial harm would be

2  such obvious terms that there would be no need to express these prohibitions in the contract. "[T]he law

3  presumes that parties never accept the risk that their counterparties will exercise their contractual

4  discretion in bad faith." *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, No. CIV.A.2822-CC, 2008

5  WL 4182998, at *1 (Del. Ch. Sep. 11, 2008).

6        90.    Through PCEC's bad faith acts in disclosing misleading ARO estimates, and in deducting

7  these costs in the midst of the COVID-19 pandemic, and thereby starving the Trust of revenue, PCEC

8  caused damage to the Trust Unitholders directly by preventing Trust Unitholders from receiving

9  distributions and by causing the Trust Unit trading value to decline precipitously. Trust Unitholders also

10  face irreparable harm from the pending delisting from the NYSE, which was proximately caused by

11  PCEC's bad faith.

12                                   **PRAYER FOR RELIEF**

13        WHEREFORE, Plaintiff, on behalf of itself and the other members of the Class, prays for

14  judgment as follows:

15        A.    Declaring this action to be a proper class action and certifying Plaintiff as the Class

16  Representative under C.C.P. §382;

17        B.    Awarding Plaintiff and the other members of the Class compensatory and consequential

18  damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

19  wrongdoing in an amount to be proven at trial, including interest thereon;

20        C.    Enjoining the Trustee and PCEC from taking actions or omitting to take actions that

21  violate the Trust Agreement;

22        D.    Awarding Plaintiff and the other members of the Class pre- and post-judgment interest, as

23  well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

24        E.    Awarding Plaintiff and the other members of the Class such other and further relief as the

25  Court may deem just and proper.

26

27

28

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  July 7, 2020

SCOTT+SCOTT ATTORNEYS AT LAW LLP

JOHN T. JASNOCH (281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
THOMAS L. LAUGHLIN, IV
JING-LI YU
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
jyu@scott-scott.com

*Counsel for Plaintiff Evergreen Capital Management LLC*

## VERIFICATION

*Evergreen Capital Management LLC v. The Bank of New York Mellon Trust Company, N.A. as Trustee for Pacific Coast Oil Trust, et al.*

I, DAVID HAY, declare:

I am the Chief Investment Officer of Evergreen Capital Management LLC ("Evergreen"), the Plaintiff in the above-entitled matter. I am authorized to act on behalf of Evergreen. I have read the foregoing Class Action Complaint and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe those to be true.

Executed on July 2nd, 2020, at Bellevue, King County, Washington.

I declare under penalty of perjury that the foregoing is true and correct.

DAVID HAY, on Behalf of Evergreen Capital Management LLC

**COPY**                                                                          CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> John T. Jasnoch (State Bar No. 281605) <br> Scott+Scott Attorneys at Law LLP <br> 600 W. Broadway, Suite 3300, San Diego, CA 92101 <br> TELEPHONE NO.: 619-233-4565   FAX NO. *(Optional):* 619-233-0508 <br> ATTORNEY FOR *(Name):* Plaintiff EVERGREEN CAPITAL MANAGEMENT LLC | **FOR COURT USE ONLY** <br><br> **CONFORMED COPY** <br> **ORIGINAL FILED** <br> Superior Court of California <br> County of Los Angeles <br><br> **JUL 08 2020** <br><br> Sherri R. Carter, Executive Officer/Clerk of Court <br> By: Kristina Vargas, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

**CASE NAME:**
Evergreen Capital Management v. The Bank of New York Mellon

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited <br> (Amount <br> demanded <br> exceeds $25,000) | [ ] Limited <br> (Amount <br> demanded is <br> $25,000) | [ ] Counter | [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | **20STCV26290** |
| | | | JUDGE: <br> DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [x] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel      e. [ ] Coordination with related actions pending in one or more
       issues that will be time-consuming to resolve          courts in other counties, states, or countries; or in a federal
   c. [ ] Substantial amount of documentary evidence          court
                                 f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Two
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 7, 2020

John T. Jasnoch
_____                    ▶ _____
     (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                      Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courts.ca.gov |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**  CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE: Evergreen Capital Management LLC v. Bank of New York Mellon Trust Co | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION
- 37 -

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Evergreen Capital Management LLC v. Bank of New York Mellon Trust Co | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☑ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: | Evergreen Capital Management LLC v. Bank of New York Mellon Trust Co | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151   Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150   Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007   Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☑ A6035   Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141   Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160   Abstract of Judgment | 2, 6 |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030   Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113   Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121   Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123   Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190   Election Contest | 2 |
| | | ☐ A6110   Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100   Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**
- 39 -

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Evergreen Capital Management LLC v. Bank of New York Mellon Trust Co | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS. |
|---|---|
| ⌐ 1. ⌐ 2.   3.   4. ⌐ 5.   6.   7. ⌐ 8.   .9.   10.   11. | Stanley Mosk Courthouse |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Los Angeles | CA | 90012 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 7/7/2020

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**07/08/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ S. Drew _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>20STCV26290 |

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Ann I. Jones | 11 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record          Sherri R. Carter, Executive Officer / Clerk of Court

on 07/14/2020 _____                                      By S. Drew _____, Deputy Clerk
   (Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06                          - 41 -



**Los Angeles Superior Court – Public Information Office**
111 N. Hill Street, Room 107, Los Angeles, CA 90012
publicinfo@lacourt.org   www.lacourt.org

# NOTICE TO ATTORNEYS

April 6, 2018

# JUDICIAL ASSIGNMENT AND CONTACT INFORMATION NOW AVAILABLE FOR SPRING STREET COURTHOUSE

As announced in the notice to attorneys dated March 28, 2018, civil courtrooms will begin hearing cases at the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, on April 16, 2018.

Judicial assignment and contact information is as follows:

| Judicial Officer | Old Courtroom Number | Old Dept. Number | Old Bldg. Location | New Public Phone Number | New Department Number | Courtroom Type |
|---|---|---|---|---|---|---|
| Charles F. Palmer | 213-633-0153 | 33 | SMC | 213-310-7001 | Dept. 1 | Trial Courtroom |
| Patricia D. Nieto | 213-633-1091 | 91 | SMC | 213-310-7002 | Dept. 2 | PI Courtroom |
| Marc D. Gross | 213-633-1092 | 92 | SMC | 213-310-7003 | Dept. 3 | PI Courtroom |
| Dennis J. Landin | 213-633-1093 | 93 | SMC | 213-310-7004 | Dept. 4 | PI Courtroom |
| Elaine Lu | 213-633-1097 | 97 | SMC | 213-310-7005 | Dept. 5 | PI Courtroom |
| Elihu M. Berle | 213-351-7523 | 323 | CCW | 213-310-7006 | Dept. 6 | Complex Courtroom |
| Yolanda Orozco | 213-633-0698 | 98 | SMC | 213-310-7007 | Dept. 7 | PI Courtroom |
| Victor E. Chavez | 213-633-0696 | 96 | SMC | 213-310-7008 | Dept. 8 | Long Cause Courtroom |
| John Shepard Wiley, Jr. | 213-351-7511 | 311 | CCW | 213-310-7009 | Dept. 9 | Complex Courtroom |
| William F. Highberger | 213-351-7522 | 322 | CCW | 213-310-7010 | Dept. 10 | Complex Courtroom |
| Ann I. Jones | 213-351-7508 | 308 | CCW | 213-310-7011 | Dept. 11 | Complex Courtroom |
| Carolyn B. Kuhl | 213-351-7509 | 309 | CCW | 213-310-7012 | Dept. 12 | Complex Courtroom |
| Kenneth R. Freeman | 213-351-7510 | 310 | CCW | 213-310-7014 | Dept. 14 | Complex Courtroom |
| Brian S. Currey | 213-351-7524 | 324 | CCW | 213-310-7015 | Dept. 15 | Complex Courtroom |
| J. Stephen Czuleger | 213-633-0253 | 3 | SMC | 213-310-7016 | Dept. 16 | Long Cause Courtroom |
| Maren Nelson | 213-351-7507 | 307 | CCW | 213-310-7017 | Dept. 17 | Complex Courtroom |
| James R. Dunn | 213-633-0518 | 26 | SMC | 213-310-7092 | Settlement Court | Settlement Court |
| Edward A. Ferns | 213-633-0523 | 21 | SMC | 213-310-7092 | Settlement Court | Settlement Court |
| Zaven V. Sinanian | 213-633-0523 | 23 | SMC | 213-310-7092 | Settlement Court | Settlement Court |
| OPEN | 213-633-0518 | 18 | SMC | 213-310-7092 | Settlement Court | Settlement Court |
| Abraham Khan | 213-633-0518 | 13 | SMC | 213-310-7092 | Settlement Court | Settlement Court |

###

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 01/20
For Mandatory Use

1

---

### How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

**a.  The Civil Mediation Vendor Resource List**

If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

- **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
- **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
- **Mediation Center of Los Angeles (MCLA)** Program Manager info@medlationLA.org (833) 476-9145
  - Only MCLA provides mediation in person, by phone and by videoconference.

**These organizations cannot accept every case and they may decline cases at their discretion.**

Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.

NOTE:  This program does not accept family law, probate, or small claims cases.

**b.  Los Angeles County Dispute Resolution Programs**

https://wdacs.lacounty.gov/programs/drp/

- Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
  - Free, day- of- trial mediations at the courthouse. No appointment needed.
  - Free or low-cost mediations before the day of trial.
  - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
    http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

**c.  Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

---

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/CI0047.aspx

**Los Angeles Superior Court ADR website:  http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

2

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

❖**Los Angeles County Bar Association Litigation Section**❖

❖ **Los Angeles County Bar Association
Labor and Employment Law Section**❖

❖**Consumer Attorneys Association of Los Angeles**❖

❖**Southern California Defense Counsel**❖

❖**Association of Business Trial Lawyers**❖

❖**California Employment Lawyers Association**❖

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

       i.    File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

       ii.   Include a brief summary of the dispute and specify the relief requested; and

       iii.  Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

       i.    Also be filed on the approved form (copy attached);

       ii.   Include a brief summary of why the requested relief should be denied;

LACIV 036 (new) <br> LASC Approved 04/11 <br> For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No·other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at ***www.lacourt.org*** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    <span style="padding-left:3em">(INSERT DATE)</span> <span style="padding-left:10em">(INSERT DATE)</span>
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at ***www.lacourt.org*** under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR PLAINTIFF)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR DEFENDANT)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR DEFENDANT)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR DEFENDANT)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR _____)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR _____)</span>

Date:

_____
<span style="padding-left:3em">(TYPE OR PRINT NAME)</span>

➤ _____
<span style="padding-left:6em">(ATTORNEY FOR _____)</span>

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

- 51 -

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ (ATTORNEY FOR _____ )

➢ (ATTORNEY FOR _____ )

➢ (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

## PROOF OF SERVICE

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On **August 20, 2020**, I served a copy of the within document(s):  **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

☑  **VIA U.S. MAIL:** by causing the document(s) listed above to be placed in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑  **VIA EMAIL:** by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

John T. Jasnoch, Esq.
**SCOTT + SCOTT**
 **ATTORNEYS AT LAW**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel:   (619) 233-4565
Fax:  (619) 233-0508
*Email:      jjasnoch@scott-scott.com*

*Attorney for Plaintiff*
EVERGREEN CAPITAL
MANAGEMENT LLC

Thomas L. Laughlin, IV, Esq.
Jing-Li Yu, Esq.
**SCOTT + SCOTT**
 **ATTORNEYS AT LAW**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel:   (212) 233-6444
Fax:   (212) 233-6334
*Email: tlaughlin@scott-scott.com*
 *jyu@scott-scott.com*

*Attorneys for Plaintiff*
EVERGREEN CAPITAL
MANAGEMENT LLC

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **August 20, 2020** at Torrance, California.

_____
Andrea Gonzalez

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES