WILLIAM W. OXLEY, SBN 136793
ZOE M. STEINBERG, SBN 324324
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Emails: *woxley@bakerlaw.com*
*zsteinberg@bakerlaw.com*

SASHE D. DIMITROFF, TX BN 00783970
*Admitted Pro Hac Vice*
ALEXANDRA TRUJILLO, TX BN 24110452
*Admitted Pro Hac Vice*
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: 713.751.1600
Facsimile: 713.751.1717
Emails: *sdimitroff@bakerlaw.com*
*atrujillo@bakerlaw.com*

*Attorneys for Defendant*
PACIFIC COAST ENERGY COMPANY LP

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EVERGREEN CAPITAL MANAGEMENT LLC, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR PACIFIC COAST OIL TRUST and PACIFIC COAST ENERGY COMPANY LP,

Defendants.

Case No.: 2:20-CV-07561-MWF-AGR

[Hon. Michael W. Fitzgerald, Crtm. 5A]

**DEFENDANT PACIFIC COAST ENERGY COMPANY LP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION**

[*Filed concurrently with Notice of Motion; Declaration of Sasha D. Minitroff; [Proposed] Order; and Request for Judicial Notice*]

Date: September 28, 2020
Time: 10:00 a.m.
Dept: 5A

Action Filed: July 8, 2020
Action Removed: August 20, 2020

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

A. The Relevant Parties and Contracts ........ 1

B. Contractual Provisions Regarding PCEC's Role As Operator and Administrator of the Underlying Properties ........ 3

C. Procedural History ........ 4

D. Allegations Against PCEC ........ 4

III. APPLICABLE LAW ........ 4

IV. LEGAL ARGUMENT ........ 5

A. Plaintiff's Claim Against PCEC Should be Dismissed Because It Was Improperly Brought As A Direct Claim Rather Than A Derivative Claim, And Plaintiff Failed to File An Adequate Pre-Suit Demand or Otherwise Plead Futility ........ 5

1. Legal Standard for Rule 12(b)(1) and Rule 23.1 Motions to Dismiss for Lack of Standing and Failure to Meet Derivative Pre-Suit Requirements or Plead Demand Futility ........ 5

*2.* Plaintiff Lacks Standing To Bring Derivative Claims ........ 6

3. Plaintiff Further Failed to Fulfill the Derivative Claim Pre-Suit Requirements Under Delaware Law ........ 11

B. Plaintiff's Claim Against PCEC Should Also Be Dismissed Pursuant to Rule 12(b)(6) For Failing to State a Claim Upon Which Relief Can Be Granted ........ 16

1. Plaintiff Cannot Bring An Implied Covenant Claim Because the Agreements Expressly Cover the Conduct At Issue ........ 16

2. Plaintiff Further Does Not Meet The Specific Pleading Requirements As To Gross Negligence or Willful Misconduct ........ 18

C. In the Alternative, If Any Substantive Claims Remain, the Court Should Compel Arbitration Pursuant to 9 U.S.C. § 4 and Stay the Litigation ........ 20

1. Legal Standard ........ 20

2. Plaintiff's Claim Falls Within the Scope of the Trust Agreement's Broad Arbitration Provision ........ 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES




3. Alternatively, the Trust Unitholders Allege They Are Third-Party Beneficiaries Under The Trust Agreement And That Agreement Requires Them To Arbitrate Their Claim ............ 22

4. Arbitrability of Class Actions Is Contemplated by the Trust Agreement........................................................................ 24

V. CONCLUSION ........................................................................ 25


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167 (Del. Ch. 2014) ..... 17

*Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143 (Del. Ch. 2003) ..... 10

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ..... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 16

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) ..... 6

*Beckington v. American Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019) ..... 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 16, 19, 20

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ..... 13

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ..... 21

*Brook v. Acme Steel Co.*, 1989 WL 51674 (Del. Ch. May 11, 1989) ..... 9

*Chiron Corp. v. Ortho Diagnostics Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ..... 20, 21

*Cloroben Chem. Corp. v. Comegys*, 464 A.2d (Del. 1983) ..... 19

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ..... 23



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) .... 16

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984) .... 6

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .... 16

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) .... 23

*Feldman v. Cutaia*,
956 A.2d 644 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) .... 8

*Gentile v. Rossette*,
906 A.2d 91 (Del. 2006) .... 7, 8, 9

*Guttman v. Huang*,
823 A.2d 492 (Del. 2003) .... 15

*Hartsel v. Vanguard Group, Inc.*,
2011 Del. Ch. LEXIS 89 (Del. Ch. June 15, 2011) .... *passim*

*In re HP Deriv. Litig.*,
2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) .... 19

*Jardel Co., Inc. v. Hughes*,
523 A.2d 518 (Del. 1987) .... 19

*Kamen v. Kemper Fin. Serv., Inc.*,
500 U.S. 90 (1991) .... 6

*Khoja v. Orexigan Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .... 2

*Letizia v. Prudential Bache Securities, Inc.*,
802 F.2d 1185 (9th Cir. 1986) .... 23

*Milton Investments, LLC v. Lockwood Bros., II, LLC*,
2010 WL 2836404 (Del. Ch. July 20, 2010) .... 21, 22

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
922 A. 2d 417 (Del. Ch. 2007) .... 23

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ........ 24

*Protas v. Cavanagh*,
2012 Del. Ch. LEXIS 88 (Del. Ch. May 4, 2012) ........ *passim*

*QVT Fund LP v. Eurohypo Capital Funding LLC I*,
2011 WL 2672092 (Del. Ch. July 8, 2011) ........ 16, 18

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) ........ 12, 15

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 21

*Rosenbloom v. Pyott*,
765 F.3d 1137 (9th Cir. 2014) ........ 5

*Sehoy Energy L.P. v. Haven Real Estate Group, LLC*,
2017 WL 13806 19 (Del. Ch. Apr. 17, 2017) ........ 9

*Spiegel v. Buntrock*,
571 A.2d 767 (Del. 1990) ........ 13, 14

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*
845 A.2d 1031 (Del. 2004) ........ 7

*Weiss v. Swanson*,
948 A.2d 433 (Del. Ch. 2008) ........ 6

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........ 5

*WildEarth Guardians v. United States Dep't of Agric.*,
795 F.3d 1148 (9th Cir. 2015) ........ 5

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) ........ 5

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
497 F. App'x 740 (9th Cir. 2012) ........ 21

*In re Yahoo! Inc. Shareholder Derivative Litigation*,
153 F.Supp.3d 1107 (N.D. Cal. 2015) ........ 15

*Yeung v. Advanced Biologics*, LLC,
2019 WL 3936139 (S.D. Cal. Aug. 20, 2019) .................................................... 6

*Zucker v. Hassell*,
2016 WL 7011351 (Del. Ch. Nov. 30, 2016)...................................................... 14

**Statutes**

12 Del. C. § 3801(d) ........................................................................................... 15

9 U.S.C. § 2............................................................................................................. 21

9 U.S.C. § 4........................................................................................................ 20, 21

**Rules**

FED. R. CIV. P. 12(b) ..................................................................................... 4, 5, 6, 16

FED. R. CIV. P. 12(b)(1)............................................................................................... 5

FED. R. CIV. P. 12(b)(6)........................................................................................ 6, 16

FED. R. CIV. P. 23.1 ...................................................................................... *passim*

FED. R. CIV. P. 81(c)(2)............................................................................................... 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiff Evergreen Capital Management LLC ("Evergreen" or "Plaintiff") has sued Pacific Coast Energy Company, LP ("PCEC") for breach of the implied covenant of good faith and fair dealing even though Evergreen and PCEC never contracted with each other. Evergreen argues that it has the right to enforce a written contract between PCEC and its co-defendant The Bank of New York Mellon Trust Company, N.A. ("Trustee"). The law and the written contract (which Evergreen failed to attach to its complaint) demonstrate that Evergreen has no such right.

The Court should dismiss Plaintiff's claim against PCEC (1) pursuant to Federal Rule of Civil Procedure 12(b)(1) because Evergreen lacks standing to bring its claim against PCEC directly, (2) under Federal Rule of Civil Procedure 23.1, because Evergreen failed to fulfill the relevant pre-suit demand and pleading requirements for derivative claims, and (3) under Federal Rule of Civil Procedure 12(b)(6), because Plaintiff fails to state an implied covenant claim upon which relief can be granted. To the extent Plaintiff's claim survives this motion, the Court should compel it to arbitration pursuant to the Federal Arbitration Act ("FAA").

## II. FACTUAL BACKGROUND

### A. The Relevant Parties and Contracts

Plaintiff, which claims to be the largest "beneficial owner" of "Trust Units" issued by the Pacific Coast Oil Trust ("PCOT" or the "Trust"), alleges a claim for breach of the implied covenant of good faith and fair dealing against PCEC for damages sustained due to PCEC's allegedly unreasonable calculation of its asset retirement obligations ("ARO"). An ARO calculation is the legal and financial obligation associated with the retirement of a tangible, long-lived asset – in this case, the costs associated with "plugging and abandoning" certain oil wells in California.

Relevant to Plaintiff's lawsuit are two contracts: (1) the Amended and Restated Trust Agreement of Pacific Coast Oil Trust (the "Trust Agreement"); and (2) the Conveyance of Net Profits Interests and Overriding Royalty Interests (the

"Conveyance Agreement") (collectively, the "Agreements"). True and correct copies of these documents are attached to the concurrently filed Declaration of Sashe D. Dimitroff as Exhibits 1 and 2.[1]

As for the relevant players – the Trust is a Delaware statutory trust organized under the Delaware Statutory Trust Act (the "DSTA"). PCEC formed the Trust in 2012 to acquire and hold net profits and royalty interests in certain onshore oil and natural gas properties located in California (such properties are herein referred to as the "Underlying Properties"). Per the Conveyance Agreement, the Trust has a right to receive the net profits, in differing percentages, from the sale of oil and natural gas produced from the Underlying Properties (this right is herein referred to as the net profits interest, or "NPI") or in certain instances 7.5% of the proceeds (free of any production or development costs, but bearing the proportionate share of production and property taxes and post-production costs) attributable to the sale of all oil and natural gas production from certain of the Underlying Properties (the "Royalty Interest Proceeds"). *See, e.g.*, Exh. 2, Conveyance Agreement at p. 1.

PCEC is the operator of the oil and natural gas fields on the Underlying Properties from which the Trust Unitholders receive their distributions. Pursuant to the Conveyance Agreement, every month, PCEC calculates how much revenue each well produces from the sale of oil or natural gas, deducts the expenses incurred or accrued to produce and sell the oil and natural gas, and pays the Trust an amount equal to the resulting NPI revenue, or, if there is no NPI revenue, the Royalty Interest Proceeds. If any net revenue remains, PCEC provides the revenue due to the Trust, which then pays it out as distributions to the Trust Unitholders, including Plaintiff.

[1] In its Complaint, Plaintiff fails to attach the Trust Agreement or Conveyance Agreement as exhibits, despite the fact that Plaintiff references them both extensively and these agreements form the basis of its claims. The Court may treat certain documents as though they are part of the complaint itself if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim *Khoja v. Orexigan Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Filed concurrently herewith is PCEC's Request for Judicial Notice, asking this Court to take notice of the Trust Agreement and Conveyance Agreement under the incorporation by reference doctrine.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Bank of New York Mellon Trust Company, N.A. ("Trustee") is the named Trustee for the Trust. The Trust Agreement lays out the powers of the Trustee and its limited role in the administration of the Trust.

**B. Contractual Provisions Regarding PCEC's Role As Operator and Administrator of the Underlying Properties**

Pursuant to the Conveyance Agreement, PCEC is contractually required to make the NPI calculations for the Trust at the end of every payment period (defined as one month) for the relevant properties. *See* Exh. 2, Conveyance Agreement at p. 30, § 4.2. In calculating the distribution, PCEC is entitled to deduct out all costs "accrued for future plugging and abandonment of any well or facility" on relevant properties. *Id*. at pp. 4-5, 20-21.

PCEC is charged in the Conveyance Agreement with operating the relevant properties according to a "reasonably prudent operator" standard. According to Section 5.1(a) of the Conveyance Agreement: "To the extent Grantor [PCEC] controls such matters and notwithstanding anything to the contrary herein, with respect to the Subject Interests, Grantor agrees that it will conduct and carry on, or use commercially reasonable efforts to cause the operator thereof to conduct and carry on, <u>the operation and maintenance of the Subject Interests in the same manner as a reasonably prudent operator in the State of California</u> would under the same or similar circumstances acting with respect to its own properties." *See* Exh. 2, Conveyance Agreement at p. 33 (emphasis added).

Section 4.1(f) of the Conveyance Agreement contains an exculpatory provision that specifies PCEC's duties as a "reasonably prudent operator" are subject to either a gross negligence or willful misconduct standard:

> "[P]rovisions establishing and maintaining the Developed Properties net profits account and the Remaining Properties net profits account and the debiting of items thereto shall be applicable <u>regardless of whether the losses, costs, expenses, liabilities and damages that may be debited in accordance with this conveyance arose solely or in part from the active,</u>



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> passive or concurrent negligent, strict liability or any other fault of the Grantor [PCEC] … other than losses, costs, expenses, liabilities and damages that arose from the gross negligence or willful misconduct of Grantor … which shall not be debited to the [net profits accounts]."

*See* Exh. 2, Conveyance Agreement at p. 29, § 4.1(f) (original text in all caps) (emphasis added).

**C. Procedural History**

On July 8, 2020, Plaintiff, purportedly on behalf of itself and all others similarly situated, filed its Original Verified Class Action Complaint, alleging a single cause of action against PCEC, in the Superior Court of the State of California, in and for the County of Los Angeles, Case No. 20STCV26290 (the "State Court Action"). On July 21, 2020, PCEC was served with a copy of the summons and Complaint. On August 20, 2020, PCEC removed the case to this Court with the consent of co-defendant the Trustee. *See* Dkt. No. 1, Notice of Removal. PCEC did not answer or otherwise file a response to Plaintiff's Complaint in the State Court Action, so this is its first responsive pleading timely brought pursuant to FED. R. CIV. P. 12(b) and 81(c)(2).

**D. Allegations Against PCEC**

Plaintiff alleges only one cause of action against PCEC – breach of the implied covenant of good faith and fair dealing. *See* Complaint, ¶¶ 87-91. Plaintiff does not allege that PCEC breached this implied duty with regards to any particular contract provision in the Agreements. *See id*. Instead, Plaintiff generally alleges that PCEC gave "misleading projections and disclosing and deducting unsupported ARO estimates from the Trust unit distributions" which prevented the Trust unitholders "from receiving distributions and…the Trust Unit trading value to decline precipitously." *Id*. ¶ 90.

**III. APPLICABLE LAW**

The Trust Agreement and the Trust are governed by the laws of the State of Delaware. Exh. 1, Trust Agreement, at p. 37. This Motion therefore relies on

Delaware law relating to the interpretation of the Trust Agreement and the Plaintiff's claim against PCEC. The Motion relies on Ninth Circuit law for all procedural issues.

## IV. LEGAL ARGUMENT

### A. Plaintiff's Claim Against PCEC Should be Dismissed Because It Was Improperly Brought As A Direct Claim Rather Than A Derivative Claim, And Plaintiff Failed to File An Adequate Pre-Suit Demand or Otherwise Plead Futility

#### 1. Legal Standard for Rule 12(b)(1) and Rule 23.1 Motions to Dismiss for Lack of Standing and Failure to Meet Derivative Pre-Suit Requirements or Plead Demand Futility

A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or factual. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Id*. Standing is properly challenged through a Rule 12(b)(1) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A plaintiff has the burden to establish that it has standing. *WildEarth Guardians v. United States Dep't of Agric*., 795 F.3d 1148, 1154 (9th Cir. 2015).

Federal Rule of Civil Procedure 23.1 governs derivative actions, *see Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014), imposing the requirement that a plaintiff "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." FED. R. CIV. P. 23.1(b)(3).

Rule 23.1 only involves the adequacy of a plaintiff's pleadings, while "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Rosenbloom*, 765 F.3d at 1148 (internal citation omitted). Given that the Trust is a Delaware statutory trust organized under the DSTA, Delaware law applies to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

determine whether the demand is futile. *See, e.g., Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108–09 (1991) (reasoning in the context of a corporate entity, "a court that is entertaining a derivative action ... must apply the demand futility exception as defined by the State of incorporation.").

The pleading requirements in FED. R. CIV. P. 23.1 are substantively the same as those set forth in Rule 23.1 of the Rules of the Court of Chancery of the State of Delaware and incorporated in Section 3816 of the DSTA. *Protas v. Cavanagh*, No. 655-VCG, 2012 Del. Ch. LEXIS 88, at *16 (Del. Ch. May 4, 2012); Ct. Ch. R. 23.1.

In the context of a pre-suit demand, directors [or Trustees] are entitled to a presumption that they fulfilled their duties, and "the burden is upon the plaintiff in the derivative action to overcome that presumption" with particularized factual allegations. *Beam v. Stewart*, 845 A.2d 1040, 1048– 49 (Del. 2004); *see also Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) (The requirement of particularized facts means that a plaintiff's pleading burden in the demand futility context is "more onerous" than that required to withstand a Rule 12(b)(6) motion).

### *2.* <u>Plaintiff Lacks Standing To Bring Derivative Claims</u>

At its core, Plaintiff's claim against PCEC is derivative in nature. Derivative actions are "exceptions to the normal rule that the proper party to bring a suit on behalf of the corporation [or, in this instance, a Trust] is the corporation [Trust] itself … ." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984). If a Plaintiff only alleges individual injury that is incidental to the injury suffered by the Trust but nonetheless chooses to pursue a direct rather than a derivative claim, its direct claim is subject to dismissal for lack of standing. *See, e.g., Yeung v. Advanced Biologics*, LLC, 2019 WL 3936139, at *4 (S.D. Cal. Aug. 20, 2019).

By means of artful pleading and misstating the standard to be applied, here Plaintiff fashions its claims as direct in an attempt to circumvent the express language of the Trust Agreement and avoid the derivative claim pre-suit demand and/or futility pleading requirements.

The Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.* laid out a simple test for distinguishing between direct and derivative claims: "[t]he analysis must be based solely on the following questions: who suffered the alleged harm – the corporation [*i.e.*, the Trust] or the suing stockholders [unitholders] individually – and who would receive the benefit of recovery or remedy." 845 A.2d 1031, 1035 (Del. 2004). Applying the *Tooley* test, Delaware courts have held that the types of claims which are considered derivative include: (i) mismanagement that depresses the value of shares; (ii) breaches of fiduciary duty that harm the company [Trust] or shareholders [unitholders] as a whole; and (iii) waste of corporate [or Trust] assets.[2] By contrast, direct actions generally require a more particularized and individual harm, such as, for example, actions by the corporation [or Trust] that unfairly affect a specific shareholder's right to vote.[3]

Two cases from the Delaware Court of Chancery exactly address direct versus derivative claims and pre-suit demands and pleading of futility in the context of statutory trusts created under the DSTA. Notably, prior to these cases, no Delaware Court had meaningfully interpreted the derivative action rules in the DSTA. In *Hartsel v. Vanguard Group, Inc.*, No. 5394-VCP, 2011 Del. Ch. LEXIS 89 (Del. Ch. June 15, 2011), the Delaware Court of Chancery confirmed that the *Tooley* test was applicable to statutory trusts created under the DSTA. In *Protas v. Cavanagh*, No. 655-VCG, 2012 Del. Ch. LEXIS 88 (Del. Ch. May 4, 2012), the Delaware Court of Chancery further confirmed the general rule that it is the substance of a claim – *not* how it is styled by the plaintiff – that determines whether a claim is direct or derivative.

*Protas* is particularly instructive in this case. In *Protas*, the plaintiff – a

---

[2] *See, e.g.*, *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006) (Finding that when a claim is based on dilution in value of a corporation's stock, the claim is generally derivative because a shareholder's "the loss of value "is merely the unavoidable result ... of the reduction in the value of the entire corporate entity.").

[3] *See, e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) (looking at the "heart of the complaint" and determining that the allegation of overpayment and waste was derivative in nature).





BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

common shareholder in a statutory trust – brought suit against the trustee and certain "aiding and abetting" third parties that allegedly participated in the improper redemption of illiquid auction market preferred shares. 2012 Del. Ch. LEXIS 88 at *6. Plaintiff's "direct" claim was entirely dependent on the harm caused by the Trust fund's overpayment for the preferred shares. *Id.* According to the Court: "Plaintiff attempts to slip her claim past the higher [derivative] pleading standard by characterizing the harm as a 'missed opportunity injury' suffered by the common stockholders individually … [but] avoiding the demand requirement by restating a derivative claim under the guise of a direct claim 'alleging the same fundamental harm in a slightly different way' is the type of bootstrap allegation that this Court has consistently rejected." *Id*. (citing *Feldman v. Cutaia*, 956 A.2d 644, 659–60 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008)).

The Court of Chancery reasoned: "Though the overpayment [for the preferred shares] may diminish the value of the corporation's stock or deplete corporate assets that might otherwise be used to benefit the stockholders, such as through a dividend, these harms are 'merely the unavoidable result ... of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction.' In the eyes of the law, such equal 'injury' to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually." *Id.* at * 6 (citing *Gentile*, 906 A.2d at 102–03). Based on this reasoning, the Court of Chancery ultimately held that Plaintiff's claim was most appropriately categorized as derivative, and that Plaintiff must meet the pre-suit demand requirements under Section 3816 of the DSTA.

Similarly, in *Hartsel*, the Court of Chancery held that because the Plaintiff stockholders in statutory trust funds only alleged injury based on the diminished value of their investment, "any injury to Plaintiffs based on a diminution in the value of their shares is secondary and derivative to the alleged injury suffered by the [f]unds themselves." 2011 Del. Ch. LEXIS 89, at *18. Because the *Hartsel* court considered

the claims derivative and not direct, and plaintiffs did not adequately make a demand on the relevant Board of Trustees or otherwise plead futility, their claims were dismissed with prejudice. *Id*. at *20-22; 28.

Like the plaintiff(s) in *Hartsel* and *Protas*, here Plaintiff brings no claim or allegation of injury that is specific and distinct from the harm suffered by the Trust as a whole. *See id.* at *7 ("[D]irect claims [must] allege harm distinct from that suffered by the corporation [or Trust] …") (citing *Brook v. Acme Steel Co.*, 1989 WL 51674, at *2 (Del. Ch. May 11, 1989)). Specifically, Plaintiff claims breach of the Trust Agreement (as against the Trustee) and breach of the implied covenant of good faith and fair dealing (as against PCEC) and alleges the following harm: (i) the Trust unitholders "have not received any distributions … [for] nine months," Complaint, ¶¶ 85, 90; (ii) "PCEC's actions have led to a collapse in the Trust unit trading price," *id*.; and (iii) "the Trust … does not anticipate receiving enough revenue to prevent dissolution under the Trust Agreement in two years." *Id*. ¶ 85.

An act by the Trustee or PCEC that allegedly resulted in a decreased value of the Trust's stock (unit) price – and subsequently limited unitholder distributions – falls squarely within Delaware's definition of a "derivative" injury. *See Protas*, 2012 Del. Ch. LEXIS 88 at *6-7; *Gentile*, 906 A.2d at 102–03. Plaintiff further alleges no specific, individual injury that is not allegedly suffered by the Trust itself. *See id.* Indeed, the negatively-affected distributions to Plaintiff and other similarly situated unitholders over the last year was "merely the unavoidable result ... of the reduction in the value" of the underlying Trust assets (*i.e.* received NPI). *Id.* at *7.

Notably, Plaintiff admits that its claim is derivative in nature, but miscites *Sehoy Energy L.P. v. Haven Real Estate Group, LLC*, C.A. No 12387, 2017 WL 13806 19, at *8 (Del. Ch. Apr. 17, 2017) for the premise that Plaintiff can bring "direct claims . . . when the entity at issue is a mere pass through entity and the benefits flow directly back to investors." *See* Complaint, ¶ 37. However, this case (and those cited internally) are expressly limited in their holdings based on "special





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

circumstances present in the context of [particular] limited partnership[s] … ." *See id.* (citing *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 151 (Del. Ch. 2003) (emphasis added)). Those circumstances do not exist here. Moreover, Plaintiff ignores the Court of Chancery's findings in *Hartsel* and *Protas*, which address direct versus derivative claims in the context of Delaware statutory trusts, such as PCOT, and prohibit the Plaintiff from bringing derivative claims without making a pre-suit demand and showing that its demand was refused or would have been futile. As discussed below, Plaintiff has not, and cannot, make that showing.

Plaintiff's lack of standing to bring its direct claim is echoed in the language of the Trust Agreement because (i) Plaintiff and those similarly situated are not Trust Unitholders or third-party beneficiaries, and (ii) even if they were, the Trust Agreement precludes Trust Unitholders from bringing these claims.

*First*, Plaintiff claims it is a third-party beneficiary because it is a "Trust Unitholder." *See, e.g.*, Complaint, ¶¶ 1-3, 30-38, 85, 88-90. But Plaintiff is not a "Trust Unitholder" ***because the Trust Agreement says they are not***. A "Trust Unitholder" is defined in the Trust Agreement as "the owner of one or more Trust Units as reflected on the books of the Trustee pursuant to Section 4.01 or in the records of the Depository Trust Company." Exh. 1, Trust Agreement, at p. 5. The definition of "Trust Unitholder" does not include the Plaintiff, who is simply a holder of a securities entitlement under Article 8 of the Uniform Commercial Code.[4] Per Section 4.01 of the Trust Agreement, the Trustee "is specifically authorized to rely upon the application of Article 8 of the Uniform Commercial Code . . . with respect

[4] *See* UCC § 8-301(b)(1) (purchaser is entity in whose name an uncertificated security is registered); *see also In re County of Orange*, 219 B.R. 543, 554 (Bankr. C.D. Cal. 1997) ("Part 5 of Article 8 [of the UCC] sets out a carefully designed system of rules for the indirect holding system. Persons who hold securities through brokers or custodians have security entitlements that are governed by Part 5, rather than being treated as the direct holders of securities … Part 5 of Revised Article 8 apparently contemplates that the entitlement holder look to the securities intermediary, not the issuer for recovery.") (internal citation omitted).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to . . . all matters affecting title [and] ownership [of Trust Units].” See Exh. 1, Trust Agreement at p. 21, § 6.01(b). Plaintiff therefore lacks standing to assert *any* claim pursuant to the Trust Agreement because it is not a Trust Unitholder or a third-party beneficiary.

*Second*, even if Plaintiff was a Trust Unitholder, its ability to bring a direct claim against PCEC is expressly limited by the Trust Agreement. Section 3816(e) of the DSTA provides that “[a] beneficial owner’s right to bring a derivative action *may be subject to such additional standards and restrictions* [in addition to the pre-suit demand and/or futility requirement], *if any, as are set forth in the governing instrument of the statutory trust* . . . .” *Id.* § 3816(e) (emphasis added).

Under Section 3.05(a) of the Trust Agreement: “… [t]o the fullest extent permitted by law, the Trust Unitholders *shall have no power to prosecute any claim of the Trust or the Trust Estate against any Person other than to prosecute a claim to compel performance by the Trustee on behalf of the Trust or the Trust Estate*.” Exh. 1, Trust Agreement, at p. 12, § 3.05(a) (emphasis added). As a legal entity, PCEC is a “Person” within the meaning of this provision. *Id.* at p. 4. Therefore, even if Plaintiff can be considered a “Trust Unitholder” or third-party beneficiary – which PCEC contests – it would nonetheless be limited in its ability to bring a claim against PCEC directly and could only prosecute a claim to compel performance by the Trustee on behalf of the Trust.

For these reasons, Plaintiff lacks standing to bring its claim directly and its cause of action against PCEC should be dismissed with prejudice.

**3. <u>Plaintiff Further Failed to Fulfill the Derivative Claim Pre-Suit Requirements Under Delaware Law</u>**

Plaintiff not only lacks standing to bring its claim against PCEC directly, but Plaintiff also failed to fulfill the pre-suit demand and/or futility pleading requirements under Federal Rule of Civil Procedure 23.1 and analogous Delaware state law. Plaintiff’s claim should alternatively be dismissed with prejudice on this basis.

Section 3816 of the DSTA provides general rules for bringing a derivative action on behalf of the Delaware statutory trust: "A beneficial owner [in a statutory Trust] may bring an action … in the right of a statutory trust to recover a judgment in its favor if persons with authority to do so have refused to bring the action or if an effort to cause those persons to bring the action is not likely to succeed." 12 Del. C. § 3816(a). In a derivative action complaint brought pursuant to Section 3816 of the DSTA, a plaintiff must set forth with particularity the efforts made to demand that the Trustee bring suit (commonly referred to as the "demand requirement") or specify the reasons that the plaintiff did not make such an effort (commonly referred to as "demand excused" or "demand futility"). *Id.* § 3816(c).

In both *Hartsel* and *Protas*, the Delaware Court of Chancery adopted Delaware's traditional corporate law principles for the DSTA (as it had done for the direct versus derivative claim test) to assess whether the pre-suit demand and/or pleading futility requirements had been fulfilled. 2011 Del. Ch. LEXIS 89, at *18-22; 2012 Del. Ch. LEXIS 88 at *6-7. With regards to pleading demand futility, the *Hartsel* Court specifically adopted the *Aronson* and/or *Rales* test for determining whether a complaint sufficiently pleads demand futility. See 2011 Del. Ch. LEXIS 89, at *20 (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("the *Aronson* test"); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ("the *Rales* test")).

Here, because the Plaintiff's claims are derivative, Plaintiff was mandatorily required to make a pre-suit demand or plead that its demand was either refused or futile under the standard set forth in the DSTA and general Delaware Corporate law.

#### ***a. Plaintiff Did Not File an Adequate Pre-Suit Demand on the Trustee Or Sufficiently Plead Demand Refusal***

Plaintiff did not file an adequate pre-suit demand on the Trustee based on applicable Delaware law, nor did it demonstrate that the Trustee refusal to bring suit (if any) was unreasonable.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In Delaware, a pre-suit demand must (i) present allegations of the wrongdoing to the directors (or, in this instance, the Trustee), (ii) request that they bring suit, and (iii) show that the directors (or Trustee) wrongfully refused to do so. *See, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

As Plaintiff sets forth in its Complaint: "Plaintiff's counsel wrote to or spoke with the Trustee or its counsel several times between December 2019 and April 2020 to put them on notice of the above-mentioned problems [undefined]. In its April 2020 letter to the Trustee's counsel, Plaintiff's counsel expressed that given the looming delisting deadline, the Trustee must take concrete action but has not yet received a response." Complaint, ¶¶ 9, 76.[5]

Plaintiff fails to plead (1) what "above-mentioned problems" it asked the Trustee to address, or (2) that it requested that the Trustee take any "concrete actions" to protect the interests of the Trust and Trust unitholders in light of the allegedly inflated ARO estimates. Further, no copy of the demand is attached to the Complaint for this Court's review. This fails to meet the FED. R. CIV. P. 23.1, Del. Ch. Rule 23.1 and Section 3816 of the DSTA pleading requirements for derivative claims.

Even if Plaintiff had attached its alleged demand letter to the Trustee or asked the Trustee to bring suit, Plaintiff must also allege that the Trustee wrongfully refused its demand to bring suit under the business judgment rule. *See Spiegel*, 571 A.2d at 777. Under this framework, Plaintiff must allege "particularized facts to raise a reasonable doubt that (1) the [Trustee's] decision to deny the demand was consistent with its duty of care to act on an informed basis, or (2) the [Trustee] acted in good faith, consistent with its duty of loyalty." *Id.*

[5] Notably, Plaintiff's allegation that it first sought the involvement of the Trustee to potentially bring the claims asserted in this lawsuit is an implicit acknowledgement that the Trustee retains the authority to act on behalf of the Trust and/or Trust unitholders to respond to the alleged wrongdoing, "tacitly conced[ing]" the disinterest and independence of the Trustee. *See Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990) ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.").



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

Plaintiff's complaint fails to make any such allegations. Indeed, Plaintiff's only allegation of alleged improper refusal by the Trustee is that the Trustee is conducting its own investigation to verify whether PCEC appropriately calculated the ARO accrual, but that the Trustee has not yet completed the analysis:

> The Trustee announced in November 2019 that it would engage its own consultant to come up with its own ARO estimates. Yet seven months later, the Trustee has not completed its review or taken any action whatsoever to protect the Trust or the Trust Unitholders. . . . Plaintiff [subsequently] brought potential claims to the Trustee's notice on several occasions. . . . But the Trustee, either directly or through its counsel, has not responded. Furthermore, the Trustee's public disclosures through the Trust's SEC filings, continue to represent that it is continuing to review PCEC's calculations, without doing anything to mitigate the harm PCEC has caused so far.

*See* Complaint, ¶¶ 72, 76 (emphasis added). Plaintiff's allegation that the Trustee delayed its response because it was completing its own independent analysis is neither a "denial of Plaintiff's demand" nor does it meet the *Spiegel* test (*i.e.*, Plaintiff does not allege "particularized facts to raise a reasonable doubt that (1) the [Trustee's] decision to deny the demand was consistent with its duty of care to act on an ***informed basis***, or (2) the ***[Trustee] acted in good faith***, consistent with its duty of loyalty."). 571 A.2d at 777.

Pleading demand refusal by the Trustee is "a steep road" – one that Plaintiff has not even attempted to undertake. *See Zucker v. Hassell*, 2016 WL 7011351, at *1 (Del. Ch. Nov. 30, 2016).

***b. Plaintiff Alternatively Failed To Plead Demand Futility***

Alternatively, Plaintiff has failed to allege that making a demand on the Trustee would have been futile in this circumstance.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Pleading futility is a similar, if not higher, standard than pleading wrongful refusal. Under the *Rales* test,[6] "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934.

Plaintiff's Complaint does not raise a reasonable doubt about the independence and disinterest of the Trustee. Plaintiff makes no specific allegation whatsoever claiming, for example, that the Trustee has divided loyalties or that it is somehow controlled by PCEC so as to render it an "interested person" in the Trust, as that term is defined by the DSTA. *See* 12 Del. C. § 3801(d). Plaintiff's Complaint admits that the Trustee is investigating the validity of PCEC's calculation of the ARO but makes no allegation that the Trustee has determined that PCEC has accrued the ARO expense against the Trust Unitholder's distribution in a grossly negligent manner or with willful misconduct. The Plaintiff's Complaint is silent on these issues. As such, it cannot withstand a motion to dismiss.

In summary, Plaintiff inappropriately brought derivative claims as direct claims in this lawsuit. In doing so, Plaintiff avoided issuing a proper pre-suit demand on the Trustee, failed to plead (or even consider) the wrongful refusal or futility of such a demand, and thereby failed to fulfill the strict pleading requirements set forth in FED. R. CIV. P. 23.1, Del. Ch. Rule 23.1 and Section 3816 of the DSTA. Plaintiff should not be permitted to benefit from its intentionally "artful" pleading and

[6] Delaware Courts or Courts applying Delaware law use the *Rales* test if the subject of the derivative suit is an alleged oversight of a board's duties (such as issuance of false statements or failure to oversee investments of a company). *See, e.g., In re Yahoo! Inc. Shareholder Derivative Litigation*, 153 F.Supp.3d 1107, 1119-20 (N.D. Cal. 2015) (analyzing Delaware law on failure to plead demand futility); *see also Guttman v. Huang*, 823 A.2d 492, 499–500 (Del. 2003). Seeing as Plaintiff's allegations against the Trustee and PCEC sound in failed oversight and inaction by the Trustee and false statements by PCEC, its pleading must satisfy (at a minimum) the *Rales* test.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

misstatements (or exclusion) of relevant Delaware law. PCEC therefore asks that this Court dismiss Plaintiff's Complaint with prejudice.

**B. Plaintiff's Claim Against PCEC Should Also Be Dismissed Pursuant to Rule 12(b)(6) For Failing to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s].' accepted as true, to state 'a plausible claim for relief." *Beckington v. American Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations of the complaint are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019).

Under Delaware law, to state a claim for breach of the implied covenant, "'Plaintiffs must allege: (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damage to the plaintiff.' The implied covenant comes into play, however, only where a contract is silent as to the issue in dispute. That is, it 'does not apply when the subject at issue is expressly covered by the contract.'" *QVT Fund LP v. Eurohypo Capital Funding LLC I*, 2011 WL 2672092, at *13-14 (Del. Ch. July 8, 2011) (internal citations omitted).

**1. <u>Plaintiff Cannot Bring An Implied Covenant Claim Because the Agreements Expressly Cover the Conduct At Issue</u>**

The Plaintiff admits in its complaint that its sole cause of action against PCEC





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

is based on an implied covenant claim that is only applicable to ***infer contract terms*** that are not expressly contained in the contract:

> "PCEC continues to have a statutory obligation to adhere to the 'implied covenant of good faith and fair dealing.' . . . As the Delaware Supreme Court recently explained in a case involving an oil pipeline company, 'The implied covenant is inherent in all contracts and is ***used to infer contract terms*** to handle developments or ***contractual gaps that*** the asserting party pleads ***neither party contemplated.'***

Complaint, p. 9 at ¶ 41 (emphasis added). The Plaintiff specifically alleges that PCEC violated its duty of good faith and fair dealing because, without contractual justification, it unilaterally assessed ARO costs against the Trust's revenue, thereby lowering the unit holders' profits:

> "On November 13, 2019, the Trust announced that PCEC gave the Trustee notice that 'its current undiscounted estimate of total future amount of plugging and abandonment costs attributable to the Trust is approximately $56.7 million' and that the amount [] PCEC has estimated appears likely to eliminate the significant payments to the Trust under the Net Profits Interest beginning in January of 2020.' . . . Furthermore, by improperly lowering its profit calculation through improperly pulling up costs that have not been incurred, ***PCEC is violating the conveyance agreement with the Trust by calculating profits in a manner that fails to comport with methodology required by the conveyance agreement.***"

Complaint, at p. 12, ¶¶ 58, 61.

The Delaware Court of Chancery has specifically granted 12(b)(6)-equivalent Motions to Dismiss to strike implied covenant claims in instances where the express terms of the parties' contract contains provisions that expressly permit a party to do the complained-of action. *See, e.g., Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 190 (Del. Ch. 2014). Here, the Conveyance Agreement permits PCEC to do the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

very conduct at issue in Plaintiff's Complaint – the calculation and deduction of the relevant ARO from NPI distributions to the Trust. Specifically, as set forth in Section II.B, *supra*, PCEC is:

(i) Contractually required to make the NPI calculations for the Trust at the end of every payment period (defined as one month) for both the Developed Property and Remaining Properties, *see* Exh. 2 at p. 30, § 4.2;

(ii) In making this calculation, PCEC is entitled to deduct out all costs "accrued [rather than actually incurred] for future plugging and abandonment of any well or facility on the Developed Properties Subject Interest; provided that such amounts shall not be included as part of the Developed Properties Gross Deductions in subsequent Payment Periods." *Id.* at pp. 4-5, 20-21 (emphasis added); and

(iii) In carrying out its operations and maintenance on the relevant Developed and Remaining Properties, PCEC need only act "in the same manner as a reasonably prudent operator in the State of California would do under the same or similar circumstances" (*i.e.*, without gross negligence or willful misconduct). *Id.* at p. 33.

Since the Conveyance Agreement expressly permits PCEC to accrue ARO expenses against the NPI revenue that the unit holders receive, the Plaintiff cannot maintain a claim for breach of an ***implied*** covenant. "If the contract clearly delineates the parties' rights, there is 'no room for the implied covenant' because it cannot override the express terms of a contract." *QVT Fund LP*, 2011 WL 2672092 at *14.

**2. Plaintiff Further Does Not Meet The Specific Pleading Requirements As To Gross Negligence or Willful Misconduct**

Moreover, due to the exculpatory clause in the Conveyance Agreement related to PCEC's acts as a "reasonable operator," Plaintiff cannot overcome the presumption that Plaintiff acted within its reasonable discretion unless it pleads specific facts showing that PCEC acted with gross negligence or willful misconduct.

*See* Exh. 2 at p. 29, § 4.1(f) (Grantee [the Trust] "acknowledges and agrees" that the "provisions establishing and maintaining the Developed Properties net profits account and the Remaining Properties net profits account and the debiting of items thereto shall be applicable regardless of whether the losses, costs, expenses, liabilities and damages that may be debited in accordance with this conveyance arose solely or in part from the active, passive or concurrent negligent, strict liability or any other fault of the Grantor [PCEC] … <u>other than losses, costs, expenses, liabilities and damages that arose from the gross negligence or willful misconduct of Grantor</u> … which shall not be debited to the [net profits accounts].") (emphasis added).

Although Plaintiff spends a significant amount of time discussing alleged wrongdoings by Scott Wood (a non-party) on other deals unrelated to either the ARO calculation, the oil wells or the contracts at issue, the Plaintiff fails to adequately plead facts that support its allegation that PCEC committed gross negligence or willful misconduct. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545; *In re HP Deriv. Litig.*, 2012 WL 4468423, at *4 (N.D. Cal. Sept. 25, 2012). Here, with regards to gross negligence or willful misconduct, Plaintiff only alleges that although the Trust Unitholders are not aware of the basis for PCEC's ARO estimate (*see* Complaint, ¶ 59), PCEC somehow breached its implied duty "through its bad faith or grossly negligent actions in disclosing and deducting unsupported and misleading ARO estimates, in violation of GAAP and industry practices." Complaint, ¶ 88.

Plaintiff's aforementioned conclusory statement regarding gross negligence – and noted absence of specific factual allegations pertaining to willful misconduct – fails to adequately allege how, if at all, PCEC's purported wrongdoing constitutes "a gross deviation from the standard of conduct that a reasonable person would observe in the situation" or reflects "a conscious indifference." *See, e.g., Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 530 (Del. 1987) (defining gross negligence); *see also Cloroben Chem. Corp. v. Comegys*, 464 A.2d: 887, 891 (Del. 1983) (defining willful

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

misconduct). Plaintiff's allegations regarding reduced trust NPI distributions caused by "unfortunate" timing and collapsed oil prices also cannot meet the gross negligence or willful misconduct standard. *See* Complaint, ¶ 64 ("Coming at a time when oil prices were collapsing due to the COVID-19 pandemic and global politics with oil producers, PCEC's timing for deducting these costs was especially unfortunate."). Moreover, PCEC's acts done in accordance with the express terms of the Conveyance Agreement – including accruing ARO expenses, and plugging and abandoning wells as a prudent operator (Exh. 2 at pp. 4-5, 20-21, 33) – cannot rise to the level of gross negligence or willful misconduct. *See* Complaint, ¶¶ 58-61, 69.

Without further factual allegations, Plaintiff's Complaint "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Accordingly, Plaintiff's allegations against PCEC fail to state an implied covenant claim upon which relief can be granted. Plaintiff's cause of action against PCEC should be dismissed.

**C. In the Alternative, If Any Substantive Claims Remain, the Court Should Compel Arbitration Pursuant to 9 U.S.C. § 4 and Stay the Litigation**

To the extent that Plaintiff has standing to sue at all, Plaintiff's claim against PCEC is improper before this Court because Article XI of the Trust Agreement by which Plaintiff is bound calls for arbitration of "any dispute, controversy or claim that may arise…in connection with or otherwise relating to the Transaction Documents." Exh. 1, Trust Agreement, at p. 33.

**1. <u>Legal Standard</u>**

To determine whether to direct the parties to arbitration, the court generally answers two questions: (1) whether the parties have a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of that arbitration agreement. *See Chiron Corp. v. Ortho Diagnostics Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Id.* Pursuant to the



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

FAA, arbitration agreements evidencing a transaction involving commerce, "shall be valid, irrevocable, and enforceable," and a party under a valid, written arbitration agreement may ask the Court for an order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §§ 2, 4. Although it is ordinarily the court's role to determine whether a valid arbitration agreement exists, *see Chiron Corp.*, 207 F.3d at 1130, parties to an arbitration agreement can agree to delegate the gateway issue of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The incorporation of the American Arbitration Association ("AAA") rules and procedures into an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

**2. Plaintiff's Claim Falls Within the Scope of the Trust Agreement's Broad Arbitration Provision**

Article XI of the Trust Agreement – the provision titled "Arbitration" – provides that the Trust Unitholders (*i.e.* the entities through which Evergreen claims to hold a beneficial interest), the Trustee and PCEC agree that "any dispute, controversy or claim that may arise" between PCEC and the Trust and/or Trustee "in connection with or otherwise relating to the Transaction Documents"[7] shall be resolved in binding arbitration in Los Angeles, California under the AAA Rules. *See* Exh. 1, Trust Agreement, at pp. 33-34. Pursuant to Delaware law, a provision which provides that "any dispute, controversy or claim arising from or relating to th[e] Agreement" shall be subject to arbitration, is considered a broad provision. *Milton Investments, LLC v. Lockwood Bros., II, LLC*, No. CIV.A. 4909-VCP, 2010 WL 2836404, at *6 (Del. Ch. July 20, 2010); *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 742-43 (9th Cir. 2012) (accord). Such a provision establishes a "clear and unmistakable intent" to submit all disputes concerning or arising out of a contract to arbitration. *Id.*

[7] "Transaction Documents" are defined to mean the Trust Agreement, Conveyance Agreement, and the Operating Agreement. *See* Exh. 1, Trust Agreement, at p. 6.

Here, Plaintiff's claim against PCEC falls within the scope of Article XI for two reasons: (1) it falls within the broad arbitration provision, since the implied covenant claim arises or "otherwise relate[s]" to the Trust Agreement, *see Milton Investments*, 2010 WL 2836406, at *6, and (2) the arbitration clause in Article XI specifically contemplates the Trust Unitholders.

To this second point, Article XI is structured so that if Trust Unitholders were to bring suit against PCEC arising out of the relevant Agreements, such an action would be subject to arbitration given that the action *would necessarily be brought by the Trustee and/or on behalf of the Trust against PCEC.*[8] This understanding is memorialized by virtue of Article XI acknowledging that the "Trust Unitholders … agree that … any dispute, controversy or claim that may arise between or among PCEC (on the one hand) … and the Trust or the Trustee (on the other hand) … shall be finally, conclusively and exclusively settled by binding arbitration … ." *See* Exh. 1, Trust Agreement, at p. 33. (emphasis added) (all caps in original). Effectively, Article XI sets the parameter that if the Trust Unitholders had a claim against PCEC, arising from or related to the relevant Agreements, the Trust Unitholders' interests would be treated as indistinguishable from the Trust, and the Trustee would represent the interests of both the Trust and Unitholders. By alleging that it is a Trust Unitholder, Plaintiff is necessarily alleging that it agreed to bound by Article XI and "waived [its] right to seek remedies in court, including, without limitation, [its] right to a trial by jury" for any dispute, controversy or claim to which Article XI applies. *See, e.g.*, Complaint, ¶ 32.

**3. Alternatively, the Trust Unitholders Allege They Are Third-Party Beneficiaries Under The Trust Agreement And That Agreement Requires Them To Arbitrate Their Claim**

Plaintiff should be compelled to arbitrate because it alleges it is an intended third-party beneficiary of the Trust Agreement. Specifically, in its Complaint,

[8] Indeed, this ties in directly with the point above in Section IV.A.2 that Plaintiff should have made a derivative claim in this instance, not a direct claim.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff specifically asserts that the Trust Unitholders (through which Plaintiff claims a beneficial interest) are third-party beneficiaries of the Trust Agreement:

> "The Trust Unitholders, though not directly parties to the contract, are third-party beneficiaries or are directly related to the Trust Agreement….because the Trust is established expressly for their benefit."

Complaint, ¶ 32 (emphasis added); *see also id.* ¶ 34 ("Article IV of the Trust Agreement further outlines the rights [and duties] of the Trust Unitholders, stating … 'A Trust Unitholder (whether by assignment or otherwise) ***shall take and hold each Trust Unit subject to the terms and provisions of this Agreement***.'") (emphasis added).

Under Delaware law, when a third party beneficiary accepts the benefits of a contract, it must also accept its burdens, including the duty to arbitrate. *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A. 2d 417, 430, 433 (Del. Ch. 2007).[9] A third party beneficiary is therefore bound by the terms of the underlying contract where the claims asserted by the beneficiary arose out of the contract from which it derived its third-party beneficiary status. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001) (applying Delaware law).

Here, Plaintiff alleges it is an intended third-party beneficiary of the Trust Agreement, and its sole claim against PCEC arises out of or otherwise relates to the Trust Agreement. As such, Plaintiff is subject to ***all of the terms*** and provisions of the contract, which includes the arbitration provision. Plaintiff is bound by Article XI of the Trust Agreement and should be compelled to arbitrate.

[9] The same standard applies in the Ninth Circuit. While generally arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit, the Ninth Circuit has recognized an exception to this rule when ordinary contract or agency principles bind non-signatory parties to the arbitration agreement. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("[N]on-signatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles …") (quoting *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**4. Arbitrability of Class Actions Is Contemplated by the Trust Agreement**

Article XI of the Trust Agreement applies to class actions, not just individual disputes. *See* Exh. 1, Trust Agreement, at p. 34. Article XI at paragraph (i) states that "[t]his Article XI shall preclude participation by the Trust (or the Trustee as trustee of the trust) in any class action brought against PCEC by any Person who is not a Trust Unitholder … but shall not preclude participation by the Trust (or the Trustee as trustee of the Trust) in any such action brought by Trust Unitholders … ." Exh. 1, Trust Agreement, at p. 36 (emphasis added). Implicit in this language is the clear and unmistakable evidence that the Trust Agreement contemplated the possibility of class actions and encouraged the Trust and/or Trustee's participation in Trust Unitholder suits. As a purported "Trust Unitholder," Plaintiff has elected to avail itself to this class action arbitration provision.

Additionally, the Ninth Circuit has concluded that the incorporation of the AAA Rules into an arbitration provision can delegate to an arbitrator the gateway issues of (1) whether there is an agreement to arbitrate between the parties, and (2) whether the agreement covers the dispute, because, by the incorporation of the AAA, "the parties clearly and unmistakably" chose to have the issues delegated to an arbitrator. *See Opus Bank*, 796 F.3d at 1130.

Here, Article XI of the Trust Agreement incorporates the AAA Rules: "…[T]he initiation and conduct of arbitration shall be set forth in the [Commercial Arbitration Rules of the American Arbitration Association], which Rules are incorporated in this Agreement by reference with the same effect as if they were set forth in this Agreement." Exh. 1, Trust Agreement, at pp. 33-34. The AAA Rules themselves call for the issue of arbitrability of class actions to be delegated to an arbitrator, specifically: "Upon appointment, the arbitrator shall determine as a threshold matter…whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplemental Rules for Class

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Arbitrations, at pp. 3-4, Section 3. If the arbitrator decides that the relevant arbitration clause permits the arbitrability of class actions, then the arbitrator next decides whether a class exists. *See id*. at Section 4(a). Per the AAA Rules, the arbitrator issues a partial award certifying a class (or not) and stays the proceedings so the parties can challenge the decision. *Id.* at Sections 5(a) and (d).

Based on the foregoing, if Plaintiff has the right to bring its claim directly against PCEC as a purported Trust Unitholder – which PCEC again contests, pursuant to Section IV.A, *supra* – Plaintiff's dispute would fall within Article XI of the Trust Agreement, as its claim should have been brought on behalf of the Trust and is directly related to the underlying Agreements. The fact that Plaintiff brings its claim against PCEC individually and on behalf of those similarly situated as a class action does not diminish the arbitrability of its implied covenant claim. Plaintiff should be compelled to arbitrate.

## V. CONCLUSION

For the foregoing reasons, PCEC respectfully requests that the Court grant its Motion.

Respectfully submitted,

Dated: August 27, 2020

**BAKER & HOSTETLER LLP**

By: */S/ William W. Oxley*

WILLIAM W. OXLEY
SASHE D. DIMITROFF
ZOE M. STEINBERG
ALEXANDRA TRUJILLO

*Attorneys for Defendant*
PACIFIC COAST ENERGY COMPANY LP

# PROOF OF SERVICE

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On **August 27, 2020**, I served a copy of the within document(s): **DEFENDANT PACIFIC COAST ENERGY COMPANY LP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION**

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill in the care and custody of **Golden State Overnight** and causing the envelope to be delivered to a **Golden State Overnight** agent for delivery on the next business day.

☐ by placing document(s) listed above in the care and custody of Ace Attorney Services for personal delivery to the person(s) at the address(es) set forth below. Proof of service to be filed after completion of service.

☑ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

John T. Jasnoch, Esq.
**SCOTT + SCOTT**
**ATTORNEYS AT LAW**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
Fax: (619) 233-0508
*Email: jjasnoch@scott-scott.com*

*Attorney for Plaintiff*

Thomas L. Laughlin, IV, Esq.
Jing-Li Yu, Esq.
**SCOTT + SCOTT**
**ATTORNEYS AT LAW**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: (212) 233-6444
Fax: (212) 233-6334
*Email: tlaughlin@scott-scott.com*
*jyu@scott-scott.com*

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **August 27, 2020** at Los Angeles, California.

*/S/ Laura Hua*
Laura Hua