1  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
   JOHN T. JASNOCH (281605)
2  600 W. Broadway, Suite 3300
   San Diego, CA 92101
3  Telephone: 619-233-4565
   Facsimile: 619-233-0508
4  jjasnoch@scott-scott.com

5  *Counsel for Plaintiff Evergreen Capital Management LLC*

6  [Additional Counsel on Signature Page.]

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  EVERGREEN CAPITAL                )
    MANAGEMENT LLC, Individually     )   Case No. 2:20-CV-07561-MWF-AGR
12  and on Behalf of All Others Similarly )
    Situated,                        )
13                                   )
                         Plaintiff,  )   **OPPOSITION TO PACIFIC**
14                                   )   **COAST ENERGY COMPANY LP'S**
                                     )   **MOTION TO DISMISS**
15          vs.                      )   **PLAINTIFF'S COMPLAINT, OR**
                                     )   **ALTERNATIVELY, COMPEL**
16  THE BANK OF NEW YORK             )   **ARBITRATION**
    MELLON TRUST COMPANY,            )
17  N.A. AS TRUSTEE FOR PACIFIC      )   Hon. Michael W. Fitzgerald,
    COAST OIL TRUST AND PACIFIC      )   Crtm. 5A
18  COAST ENERGY COMPANY LP,         )
                                     )   Date: October 19, 2020
19                       Defendants. )   Time: 10:00 a.m.
                                     )
20                                   )
                                     )
21                                   )   Action Filed: July 8, 2020
                                     )   Action Removed: August 20, 2020
22  _____      )

23

24

25

26

27

28
_____
OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT,
OR ALTERNATIVELY, COMPEL ARBITRATION

1

2

# **TABLE OF CONTENTS**

3   SUMMARY OF THE ARGUMENT ....................................................................... 1

4   STATEMENT OF FACTS ..................................................................................... 3

5   LEGAL STANDARDS .......................................................................................... 5

6   ARGUMENT.......................................................................................................... 6

7       I.      This Court Does Not Have Jurisdiction to Decide This Motion

8               to Dismiss........................................................................................... 6

9       II.     The Trust Agreement's Arbitration Provision Does Not Apply........... 7

10      III.    Plaintiff Is a Unitholder with Standing to Sue Under the Trust

11              Agreement and the DTSA ................................................................... 8

12      IV.     Plaintiff has Stated a Direct Claim against PCEC, Not a Claim

13              Belonging to the Trust ..................................................................... 11

14              A.      The Alleged Harm Is from a Breach of a Covenant with

15                      Plaintiff and the Unitholders...................................................... 11

16              B.      Plaintiff Seeks Recovery For Itself, Not the Trust .................. 12

17              C.      The Pass-Through Nature of the Trust Compels Plaintiff

18                      to Bring This Claim as a Direct Claim .................................... 14

19

20      V.      The Impending Dissolution Further Illustrates Direct Harm to

21              Trust Unitholders ............................................................................ 17

22      VI.     Plaintiff Has Adequately Pled a Claim for Breach of the

23              Implied Covenant of Good Faith and Fair Dealing ........................... 17

24              A.      Plaintiff's Implied Covenant Claim Relating to PCEC

25                      Involves Factual Disputes that Cannot Be Resolved in a

26                      Motion to Dismiss ................................................................... 19

27

28

i

1
2
3

      B.    Plaintiff's Claim Relating to PCEC Is Properly an
Implied Covenant Claim Because the Trust and
Conveyance Agreements Do Not Define Key Terms .............. 21

4
5

      C.    Defendants Breached the Implied Covenant in Abusing
the Discretion Afforded to Them ............................................. 22

6

CONCLUSION ......................................................................................... 24

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT,
OR ALTERNATIVELY, COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*,
    50 A.3d 434 (Del. Ch. 2012),
    *rev'd on other grounds* 68 A.3d 665 (Del. 2013) ................................................ 22

*Allen v. El Paso Pipeline GP Co., LLC*,
    90 A.3d 1097 (Del. Ch. 2014) ........................................................................... 12

*Amirsaleh v. Bd. of Trade of New York, Inc.*,
    2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ............................................ 22, 23

*Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*,
    829 A.2d 143 (Del. Ch. 2003) ............................................... 13, 14, 15 16

*Arkansas Teacher Ret. Sys. v. Alon USA Energy, Inc.*,
    2019 WL 2714331 (Del. Ch. June 28, 2019) ..................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 5

*Bakerman v. Sidney Frank Imp. Co.*,
    2006 WL 3927242 (Del. Ch. Oct. 10, 2006) ..................................................... 19

*Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Na'l. Ass'n*,
    2015 WL 2359319 (S.D.N.Y. May 18, 2015) ............................................ 12, 13

*Breakaway Sols., Inc. v. Morgan Stanley & Co.*,
    2004 WL 1949300 (Del. Ch. Aug. 27, 2004) ..................................................... 19

*Chamison v. Healthtrust, Inc.-Hosp. Co.*,
    735 A.2d 912 (Del. Ch. 1999), *aff'd* 748 A.2d 407 (Del. 2000) ........................ 18

*CMS Inv. Holdings, LLC v. Castle*,
    2015 WL 3894021 (Del. Ch. June 23, 2015) .............................................. 17, 19

*Comrie v. Enterasys Networks, Inc.*,
    837 A.2d 1 (Del. Ch. 2003) ............................................................................... 19

iii

*In re CVR Refining LP Unitholder Litig.*,
  2020 WL 506680 (Del. Ch. Jan. 31, 2020) ........................................................ 23

*Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd.*,
  2015 WL 1056324 (N.D. Cal. Mar. 10, 2015) ..................................................... 6

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*,
  624 A.2d 1199 (Del. 1993)............................................................................ 19, 20

*Dieckman v. Regency GP LP*,
  155 A.3d 358 (Del. 2017).................................................................................. 23

*Dunlap v. State Farm Fire & Cas. Co.*,
  878 A.2d 434 (Del. 2005).................................................................................. 18

*In re Cencom Cable Income Partners LP Litig.*,
  2000 WL 130629 (Del. Ch. Jan. 27, 2000) ......................................................... 2

*In re Encore Energy Partners LP Unitholder Litig.*,
  2012 WL 3792997 (Del. Ch. Aug. 31, 2012)..................................................... 23

*In re Kinder Morgan, Inc. Corp Reorganization Litig.*,
  2015 WL 4975270 (Del. Ch. Aug. 20, 2015)..................................................... 18

*Hartsel v. Vanguard Group, Inc.*,
  2011 WL 2421003 (Del. Ch. June 15, 2011) ................................................ 15, 16

*Keating v. Applus Techs., Inc.*,
  2009 WL 261091 (E.D. Pa. Feb. 4, 2009).......................................................... 24

*Kelly v. Kiewit Infrastructure W. Co.*,
  2018 WL 6566555 (C.D. Cal. Sept. 12, 2018) .................................................... 7

*Kuroda v. SPJS Holdings, L.L.C.*,
  971 A.2d 872 (Del. Ch. Apr. 15, 2009).......................................................... 3, 18

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
  118 A.3d 175 (Del. 2015).................................................................................. 13

*Northstar Fin. Advisors Inc. v. Schwab Investments*,
  779 F.3d 1036 (9th Cir.) .................................................................................... 16

*Padilla v. Alta Dena Certified Dairy, LLC*,
   2019 WL 7865173 (C.D. Cal. Sept. 26, 2019)...............................................7, 8

*Policemen's Annuity & Benefit Fund of Chi. v. DV Realty Advisors LLC*,
   2012 WL 3548206 (Del. Ch. Aug. 16, 2012).......................................................23

*Protas v. Cavanagh*,
   2012 WL 1580969 (Del. Ch. May 4, 2012) ................................................ 15, 16

*Renco Group, Inc. v. MacAndrews AMG Holdings LLC*,
   2015 WL 394011 (Del. Ch. Jan. 29, 2015) ........................................................19

*Rivas v. Wells Fargo Bank, N.A.*,
   2016 WL 8730674 (E.D. Cal. Dec. 9, 2016)........................................................6

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) .........................................................15

*Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015) .................................................................14

*Ruffalo v. Transtech Serv. Partners Inc.*,
   2010 WL 3307487 (Del. Ch. Aug. 23, 2010).......................................................12

*Sehoy Energy LP v. Haven Real Estate Grp., LLC*,
   2017 WL 1380619 (Del. Ch. Apr. 17, 2017) ............................................... 15, 16

*Thor Merritt Square, LLC v. Bayview Malls LLC*,
   2010 WL 972776 (Del. Ch. Mar. 5, 2010)..................................................10, 21

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004).............................................................................*passim*

*Wezel-Peterson v. Home Depot U.S.A., Inc.*,
   2017 WL 11272588 (C.D. Cal. Oct. 3, 2017) .......................................................7

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................6

**STATUTES, REGULATIONS & OTHER AUTHORITIES**

CLASS ACTION FAIRNESS ACT................................................................................1, 6

DELAWARE STATUTORY TRUST ACT .........................................................................5

v

12 DELAWARE CODE
    §3804 .............................................................................................................. 10

FED. R. CIV. P.
    23.1 ................................................................................................................. 2

Evergreen Capital Management LLC ("Evergreen" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss or, alternatively, compel arbitration, filed by Defendant Pacific Coast Energy Company LP ("PCEC") (the "Motion to Dismiss") (ECF No. 15).[1]

## SUMMARY OF THE ARGUMENT

Plaintiff is an investor and "Trust Unitholder" in the Pacific Coast Oil Trust (the "Trust"), a Delaware statutory trust that holds certain oil profit and royalty interests for the benefit of Trust Unitholders, which own "Trust Units."[2]  PCEC is the operator of the related oil fields and the entity responsible for calculating and making a monthly payment owed to the Trust and Unitholders.  Pursuant to a Trust Agreement and a Conveyance Agreement (together, the "Agreements"), PCEC must remit certain profits and royalties to the Trust, which then disburses the funds, minus expenses, to Unitholders.  Plaintiff alleges that those payments were not properly made and that, in withholding those payments, PCEC breached the implied covenant of good faith and fair dealing in the Trust Agreement.

This action was originally filed in state court; Plaintiff's Motion to Remand (ECF No. 21) was filed on September 8, 2020.  As this Court's jurisdiction is a threshold issue, the Motion to Remand must be considered before the Motion to Dismiss.  For the reasons discussed in Plaintiff's memorandum in support of its Motion to Remand (ECF No. 21-1), this case properly belongs in state court because the Class Action Fairness Act does not apply.  The Motion to Remand should be

---

[1]   Defendant The Bank of New York Mellon Trust Company, N.A., as Trustee for the Pacific Coast Oil Trust (the "Trustee" of the "Trust") "joins in and consents to the removal of the proceedings" to this Court (ECF No. 14 at 1).  It has not, to date, filed a motion to dismiss.  Rather, PCEC is the only defendant to file a motion to dismiss, and it only addresses the Second Cause of Action pled in the Complaint, the claim against PCEC.  There is no motion to dismiss the First Cause of Action pled against the Trustee.

[2]   Trust Unitholders are referred to herein as both "Trust Unitholders" and "Unitholders."

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION

granted and this Motion to Dismiss should be denied as moot.  Alternatively, should the Court address the merits, PCEC's motion should be denied in full.

PCEC's attempt to compel arbitration has no grounds.  The Trust Agreement's arbitration provision provides that it covers "any dispute, controversy or claim that may arise **between or among PCEC (on the one hand) and the Trust or Trustee (on the other hand)**."  But this dispute is not between PCEC and the Trust/Trustee, it is between Plaintiff (and the proposed class of Unitholders) and PCEC.  It is therefore not covered by the arbitration provision.

The Motion to Dismiss also fails on its merits.  Plaintiff's allegations, taken as true as they must be at this stage, state a direct claim for relief against PCEC. Plaintiff alleges a breach of **its own** contractual rights (not those of the Trust); Plaintiff personally suffered the alleged harm (not receiving payment due to it); and Plaintiff is the ultimate stakeholder that should and will receive the benefit of any recovery.[3]  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).  Moreover, the specific circumstances of the Trust also weigh toward categorizing Plaintiff's claim as direct rather than derivative, including the fact that the Trust is not an independent business but rather a pass-through — a "passive entity limited to the receipt of revenues [] and the distribution of [those] revenues" to Unitholders.  *See, e.g.*, *In re Cencom Cable Income Partners LP Litig.*, C.A. No. 14634, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000) ("the relationships among the parties may be so simple and the circumstances so clear-cut that the distinction between direct and derivative claims becomes irrelevant . . . [so that] superimposing derivative pleading requirements upon claims needlessly delays ultimate substantive resolution and serves no useful or meaningful public policy purpose").

---

[3]  Plaintiff did not bring a derivative claim and therefore requirements for derivative claims, set forth in Federal Rule of Civil Procedure 23.1 or elsewhere, do not apply.  Sections IV.A.2. and IV.A.3. of PCEC's Motion to Dismiss are irrelevant.

1    Plaintiff has also adequately pled its direct claim that PCEC breached the

2  implied covenant:  it alleges that PCEC calculated its costs in an unreasonable

3  manner, in violation of generally accepted accounting principles (GAAP) or industry

4  practice, and that it did this in order to stop paying Unitholders and essentially steal

5  from them.  These allegations make clear that PCEC acted with gross negligence or

6  willful misconduct.   Nothing in the Trust Agreement (or the Conveyance

7  Agreement) extinguishes this claim, which "inheres in every contract and requires a

8  party in a contractual relationship to refrain from arbitrary or unreasonable conduct

9  which has the effect of preventing the other party to the contract from receiving the

10  fruits of the bargain." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del.

11  Ch. Apr. 15, 2009).[4]

12    For these reasons, PCEC's Motion to Dismiss should be denied in its entirety.

13               **STATEMENT OF FACTS**

14    The Trust is a pass-through entity established solely to receive and distribute

15  profits from oil-well interests to Unitholders.  ¶¶25-29.  The Trust has no directors,

16  officers, or employees.   ¶29.   It conducts no business other than receiving,

17  processing, and distributing payments to Unitholders.  The Trust also does not have

18  the right to issue additional Trust Units; instead, the Trust Agreement provides,

19  "Ownership of the entire Beneficial Interest shall be divided into 38,583,158 Trust

20  Units." ECF No. 15-2 at 16 (Trust Agreement at §4.01).  Furthermore, "Each Trust

21  Unit shall represent pro rata undivided ownership of the Beneficial Interest and shall

22  entitle its holder to participate pro rata in the rights and benefits of Trust Unitholders

23  under this Agreement." *Id*. at §4.02.  A "Trust Unitholder" is defined by the Trust

24  Agreement as "the owner of one or more Trust Units as reflected on the books of the

25  Trustee pursuant to Section 4.01 or in the records of the Depository Trust Company."

26  ─────────────
27  [4]     All "¶" and "¶¶" references are to the Complaint and all capitalized terms shall
maintain the same meaning as those set forth in the Complaint.  Additionally, unless
otherwise noted, all internal citations are omitted and emphasis is added.

28

*Id.* at Art. I.  Thus, the Trust exists solely to benefit its Trust Unitholders, who are not merely residual owners of a corporation but are the ***sole*** owners of the Trust.

Under the Trust Agreement, Plaintiff is a Trust Unitholder and an intended beneficiary of the Trust Agreement.  ¶¶16, 32. PCEC was the original grantor of the Trust and is a party to the Trust Agreement.  ¶¶18, 24, 31; ECF No. 15-2 at 7.  The nature of Plaintiff's claim against PCEC is that it breached its implied covenant of good faith and fair dealing in the Trust Agreement when it improperly accounted for certain costs, thereby reducing or eliminating payment of oil revenues to the Trust, which ended revenue distributions to which Plaintiff and similarly situated Trust Unitholders were entitled.  ¶¶54, 58-70, 87-90.  PCEC's misconduct also caused the public trading value of Trust Units to nosedive, which further directly harmed Plaintiff and similarly situated Unitholders.  *Id.*  Since the Complaint was filed, the value of Trust Units has been further impaired because Trust Units have now been delisted from the NYSE due to the price being so low.  *See* ¶63.[5]  Moreover, PCEC's wrongful actions are rapidly leading to a dissolution of the Trust in less than two years, because its actions are likely to result in the Trust receiving less than $2 million of distributable income for two consecutive years.  ¶¶62-65.  Dissolution would result in more direct harm to Unitholders because they would be forced to sell their units at an impaired price.

The Trust Agreement and the related Conveyance Agreement (ECF No. 15-2 at 31-101) do not provide for PCEC's unfettered discretion in calculating costs. Instead, PCEC may deduct for "all costs accrued for future plugging and abandonment of any well or facility on the Developed Properties Subject Interests; *provided* that such amounts shall not be included as part of the Developed Properties Gross Deductions in subsequent Payment Periods."   ECF No. 15-2 at 38

---

[5]  *See* Trust Press release dated August 5, 2020: https://www.businesswire.com/news/home/20200806005153/en/Pacific-Coast-Oil-Trust-Update-NYSE-Delisting/).

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION

1   (Conveyance Agreement at 7).   The Conveyance Agreement does not provide a

2   definition of what constitutes proper "accru[al]" of costs.  But Plaintiff alleges that

3   PCEC deducted costs in violation of GAAP and industry practice.   ¶¶87-90.

4   Furthermore, PCEC must "conduct and carry on, or use commercially reasonably

5   efforts to . . . conduct and carry on, the operation and maintenance of the Subject

6   Interests in the same manner as a reasonably prudent operator in the State of

7   California would under the same or similar circumstances acting with respect to its

8   own properties."  *Id.* at 64 (Conveyance Agreement at 5.1(a)).   Whether PCEC

9   properly deducted for costs that "accrued" or acted as a "reasonably prudent

10   operator" are factual disputes between the parties.

11       The Trust Agreement includes an Arbitration Provision that applies to "any

12   dispute, controversy or claim that may arise between or among PCEC (on the one

13   hand) and the Trust or the Trustee (on the other hand)."  ECF No. 15-2 at 25 (Trust

14   Agreement, Art. XI).   However, the Arbitration Provision, by its terms, does not

15   apply to direct claims by the Trust Unitholders against either the Trustee or PCEC,

16   and therefore does not apply to the claims pled in this Action.

17       This Action seeks both damages and injunctive relief, to the direct benefit of

18   the Unitholders.

19                        **LEGAL STANDARDS**

20       The claims in this Action are governed by Delaware substantive law.   The

21   Trust was formed under the Delaware Statutory Trust Act ("DSTA") and the Trust

22   Agreement at the heart of this dispute provides that "[t]his Agreement and the Trust

23   shall be governed by the laws of the State of Delaware . . . in effect at any applicable

24   time in all matters."  ECF No. 15-2 at 27 (Trust Agreement at §12.07).

25       The Federal Rules of Civil Procedure also apply.   Under those rules, a

26   complaint "survive[s] a motion to dismiss [if it] contain[s] sufficient factual matter,

27   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

28

5

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR
ALTERNATIVELY, COMPEL ARBITRATION

*Iqbal*, 556 U.S. 662, 678 (2009).  "All allegations of material fact in the complaint [must be] taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

Because this is a contract claim, any ambiguity must be construed in favor of the non-movant, *i.e.*, the Plaintiff.  *See Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd.*, No. C 14-05256, 2015 WL 1056324, at *4 (N.D. Cal. Mar. 10, 2015) (applying Delaware law in denying motion to dismiss contract claim because "'[d]ismissal . . . is proper only if the defendants' interpretation is the only reasonable construction as a matter of law.'") (*citing VLIW Tech. LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003), punctuation in original).

## ARGUMENT

### I.    This Court Does Not Have Jurisdiction to Decide This Motion to Dismiss

Before addressing the merits of PCEC's Motion to Dismiss, the Court must first determine if the case should be remanded to state court.  Plaintiff filed a motion to remand this case on September 8, 2020 (the "Motion to Remand").  ECF Nos. 21 and 21-1.  As set forth in the Motion to Remand, this case belongs in state court because CAFA, which is the sole basis PCEC claims for removal, does not apply: the action concerns a "covered security," and the claims concern solely the "internal affairs" of the Trust, and alternatively, rights, obligations, and duties created by the Trust Units.  *Id*.  Thus, if this Court agrees with Plaintiff on its Motion to Remand, this Court does not have subject matter jurisdiction to decide this motion.  "Because determination of the remand issue will facilitate litigation in the appropriate forum, and because judicial economy will be best served by addressing the remand issue," the Court should consider the motion for remand first and should not consider PCEC's Motion to Dismiss until the Motion to Remand is decided.  *Rivas v. Wells*

*Fargo Bank, N.A.*, No. 1:16-CV-01473, 2016 WL 8730674, at *2 (E.D. Cal. Dec. 9, 2016).

## II. The Trust Agreement's Arbitration Provision Does Not Apply

PCEC claims "in the alternative" that the Court should compel arbitration. PCEC's stance is inconsistent and inefficient. *See Kelly v. Kiewit Infrastructure W. Co.*, No. CV-18-5807-MWF (AGRx), 2018 WL 6566555, at *2 (C.D. Cal. Sept. 12, 2018) (pointing out defendants' "inconsistency between asking this Court to rule on a motion to dismiss and moving for arbitration") (Fitzgerald, J.). If the Arbitration Provision applies — which Plaintiff maintains does not — then the Court does not have jurisdiction to decide the merits of the claims and does not have jurisdiction to decide this motion. *See id.* ("[I]f arbitration is granted, then the arbitrator should determine what procedures, if any, are proper that are analogous to motions to dismiss or summary judgment.").

But the Arbitration Provision does not apply to Plaintiff's claims. It covers "any dispute, controversy or claim that may arise ***between or among PCEC (on the one hand) and the Trust or the Trustee (on the other hand)***" (ECF No. 15-2 at 25). The claim at issue here, however, is between the Trust Unitholders (on one hand) and PCEC (on the other). The Arbitration Provision is silent as to this claim. Because "Plaintiff did not enter into the Arbitration Provision" and its "action is outside the scope of the Arbitration Provision at issue by the provision's own terms," PCEC's motion to compel arbitration should be denied. *Wezel-Peterson v. Home Depot U.S.A., Inc.*, No. CV-17-05199-MWF (JCx), 2017 WL 11272588, at *1 (C.D. Cal. Oct. 3, 2017) (Fitzgerald, J.); *see also Padilla v. Alta Dena Certified Dairy, LLC*, No. CV-19-5020-MWF (RAOx), 2019 WL 7865173, at *1 (C.D. Cal. Sept. 26, 2019) (denying motion to compel arbitration because "[t]he arbitration

7

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION

1 agreement does not cover these statutory claims and [p]laintiff has not waived her
2 right to bring such claims in a judicial forum.") (Fitzgerald, J.).

### III. Plaintiff Is a Unitholder with Standing to Sue Under the Trust Agreement and the DTSA

5     PCEC argues that Evergreen does not have standing to sue by claiming that
6 Evergreen does not meet the definition of a "Trust Unitholder" under the Trust
7 Agreement.   PCEC correctly notes that the Trust Agreement defines "Trust
8 Unitholder" to mean "the owner of one or more Trust Units as reflected on the books
9 of the Trustee pursuant to Section 4.01 or in the records of the Depository Trust
10 Company."  MTD at 10.   But then PCEC takes a strange leap and argues that,
11 because Evergreen states that it is a "beneficial owner of Trust Units," ¶16, it does
12 not meet the definition of "Trust Unitholder" because its ownership is not "reflected
13 on the books of the Trustee." *Id.*.  This argument makes no sense.  First, despite the
14 entire "Trust Unitholder" definition in its brief, PCEC has conveniently left out here
15 the portion of the definition that defines "Trust Unitholder" to include those who
16 have their ownership of Trust Units "reflected . . . in the records of the Depository
17 Trust Company." ECF No. 15-2 at 10 (Trust Agreement at Article I).  Furthermore,
18 Plaintiff has clearly alleged in the Complaint that it is a Trust Unitholder, and
19 therefore any dispute of this by PCEC is a dispute of fact.

20     The Depository Trust Company ("DTC") acts as a central securities
21 depository ("CSD") that holds, in book-entry form, almost all securities issued in the
22 United States, to promote efficiency in the securities trading markets so that each
23 security exchange does not have to be reflected by a new record entry.  It acts as a
24 record keeper for any stock, regardless of how often it has been traded.  As the DTC
25 explains, while 85-90% of all securities are held in "street name" through
26 registration with DTC, it "merely holds them as record owner – [the beneficial owner
27 is] always the . . . actual [] owner of the securities.  This means the [beneficial owner

28

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY, COMPEL ARBITRATION

is] entitled to all the benefits — and risks — associated with owning the stock."[6] Thus, almost every stockholder or unitholder holds their stock or Trust Units through an entry "as reflected . . . in the records" of the DTC.  Even if Evergreen's Trust Units are not "reflected on the books of the Trust," they are "reflected . . . in the records" of the DTC.  Thus, Evergreen satisfies the definition of "Trust Unitholder" under the Trust Agreement.

Moreover, whether Evergreen's ownership is reflected in the records of the Trust or in DTC records is a question of fact, which cannot be resolved at the motion to dismiss stage.  PCEC does not even offer any basis for its assertion that Evergreen's ownership is not reflected in either the Trustees' books or in the records of the DTC.  Furthermore, to the extent that there is ambiguity about what the term "reflected" means, the Court must accept Plaintiff's interpretation at this stage of the proceedings. *Id*.

PCEC's reliance on the provision that "[t]o the fullest extent permitted by law," the Unitholders cannot bring claims on behalf of the Trust, is inapposite because the Trust Unitholders bring claims here on behalf of themselves, not the Trust.  As explained below, in §IV, *infra*, Plaintiff's claims are direct claims brought on behalf of their and Unitholders' rights under the Trust Agreement; they are not derivative claims brought on behalf of the Trust.  Thus, the limitations under Section 3.05(a) of the Trust Agreement do not apply to Plaintiff's claims.  *Id*.  Moreover, Section 3.05(a) applies only "[t]o the fullest extent permitted by law," and the law does not permit Unitholders to waive their direct rights under the Trust Agreement with respect to PCEC.  The DTSA provides that, except for arbitration, "a beneficial owner who is not a trustee may not waive its right to maintain a legal action or proceeding in the courts of the State with respect to matters relating to the

---

[6]   The Depository trust & Clearing Corporation, *Life Cycle of a Security*, https://www.dtcc.com/-/media/Files/Downloads/Settlement-Asset-Services/Underwriting/LCoaS.pdf.

organization or internal affairs of a statutory trust." 12 *Del. C.* §3804.  As explained in the Motion to Remand, this Action concerns the Trust's internal affairs because it relates to the duties the Trustee and Trustor (PCEC) have to the Trust Unitholders. (ECF No. 21-1 at 7-8).

Finally, although PCEC "contests" whether Plaintiff is a "third-party beneficiary" of the Trust Agreement, it offers no argument regarding Plaintiff's standing as such.  MTD at 11.  Rather, its argument relies on its inaccurate (and disputed) assertion that Evergreen is not a "Trust Unitholder."  MTD at 10.  PCEC has not offered arguments as to why Trust Unitholders who meet the definition of the Trust Agreement would lack third-party beneficiary standing to enforce their direct claims, and as such it has waived any such arguments.  *Thor Merritt Square, LLC v. Bayview Malls LLC*, No. CIV.A. 4480, 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010) ("The failure to raise a legal issue in an opening brief generally constitutes a waiver of the ability to raise that issue in connection with a matter under submission to the court.").  Regardless, Trust Unitholders clearly are third-party beneficiaries of the Trust Agreement because "the contracting parties [the Trustee and PCEC, the Trustor] intended to confer a benefit directly to that third party; they conveyed the benefit as a gift or in satisfaction of a pre-existing obligation; and conveying the benefit was a material part of the purpose for entering into the agreement." *Arkansas Teacher Ret. Sys. v. Alon USA Energy, Inc.*, No. CV 2017-0453, 2019 WL 2714331, at *2 (Del. Ch. June 28, 2019).  The Trust Agreement itself states that the Trust Agreement was made for the benefit of the Unitholders, ECF No. 15-2 at 10 (Trust Agreement §2.02(a)), and states, "The Trust Unitholders from time to time shall be the sole beneficial owners of the Trust Estate," ECF No. 15-2 at 16 (Trust Agreement §4.01).  Furthermore, the Trust Agreement expressly provides for Trust Unitholders to be bound by it, by stating "A Trust Unitholder (whether by assignment or otherwise) shall take and hold each Trust Unit subject to

10

1    all the terms and provisions of this Agreement and the Conveyance." *Id*. (Trust

2    Agreement at §4.02).

3          Thus, under the terms of the Trust Agreement and under the mandate of the

4    DTSA, Plaintiff has standing to sue as a Trust Unitholder.

5    **IV.   Plaintiff has Stated a Direct Claim against PCEC, Not a**

6    **        Claim Belonging to the Trust**

7          Delaware courts apply the *Tooley* test to determine whether a claim is direct

8    or derivative. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del.

9    2004). Under *Tooley*, "a court should look to the nature of the wrong and to whom

10   the relief should go." *Id.* at 1039. Specifically, courts ask "(1) who suffered the

11   alleged harm [ ]; and (2) who would receive the benefit of any recovery or other

12   remedy." *Id.* at 1033. Here, the answer to both questions is Plaintiff itself, not the

13   Trust, demonstrating that Plaintiff's claims are direct, not derivative.

14   **A.    The Alleged Harm Is from a Breach of a Covenant with**

15   **       Plaintiff and the Other Unitholders**

16         Applying *Tooley's* first prong, a court must ask whether "the duty breached

17   was owed to" the Unitholder or the Trust itself. *Id.* at 1039. Where "the [Unit]holder

18   can prevail without showing an injury or breach of duty to the [Trust]," the action

19   "should be treated as a direct action that may be maintained by the holder in an

20   individual capacity." *Id.* at 1036 n.9. Here, the covenant that was breached runs in

21   favor of investors, not the Trust. This is true because the Trust exists for the "sole

22   benefit" of Unitholders. *See* Trust Agreement §2.02(a) ("The purposes of the Trust

23   are, and the Trust [] shall have the power and authority and is hereby authorized: (a)

24   to acquire, hold, protect and conserve the Trust Estate for the benefit of the Trust

25   Unitholders"); §2.04 ("Trustee . . . shall hold the Trust Estate in trust for the benefit

26   of the Trust Unitholders, upon the terms and conditions set forth in this

27   Agreement."). Thus, each and every obligation of PCEC tied to the Trust Agreement

28

exists solely for the benefit of Unitholders and the first prong of the *Tooley* test is satisfied.  *See Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l. Ass'n*, No. 14-CV-9401, 2015 WL 2359319, at *6 (S.D.N.Y. May 18, 2015) (finding direct claims under *Tooley* when "the contractual promises run in favor of the investors—and not the trusts").

That Plaintiff, according to PCEC, "alleges no specific, individual injury that is not allegedly suffered by the Trust itself," MTD at 9, is of no import.  It is well established that "[s]ome theories can be asserted either as direct or derivative claims."  *Allen v. El Paso Pipeline GP Co., LLC*, 90 A.3d 1097, 1105 (Del. Ch. 2014).  "Where a shareholder is directly injured, the shareholder may bring an individual action for injuries affecting his or her legal rights, separate and distinct from an injury to the corporation."  *Ruffalo v. Transtech Serv. Partners Inc.*, No. CIV.A. 5039, 2010 WL 3307487, at *9 (Del. Ch. Aug. 23, 2010).  Moreover, *Tooley* rejected the argument that a direct claim necessitates some kind of unique injury.  *See generally Allen*, 90 A.3d at 1105-06 ("Tooley took on a recurring argument advanced by defendants in favor of characterizing claims as derivative, namely that if all stockholders held the same right, and if all of the stockholders were injured equally, then the claim should be regarded as derivative.  Tooley rejected this argument, holding that such a claim remains direct."); *Tooley* at 1037 ("a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim").

## B.    Plaintiff Seeks Recovery for Itself, Not the Trust

The second prong of the *Tooley* test also supports the conclusion that Plaintiff's claim against PCEC is direct.  The answer to "who would receive the benefit of any recovery or other remedy" is clearly Plaintiff and the other Unitholders.  Plaintiff claims that it was not paid monthly distributions that it was

12

1  entitled to.  The remedy for this is for PCEC to pay those monies to Plaintiff, not to

2  the Trust.  *See Blackrock*, 2015 WL 2359319, at *6 (finding where "the Complaint

3  is quite clear that the trusts have an absolute obligation to pass any such recovery

4  along to certificateholders," the second prong of *Tooley* is satisfied).  "The [Trust

5  itself] would receive no benefit and lack discretion to hold onto any recovery

6  obtained.  The fact that the payment path of any recovery is via the trusts does not

7  alter its true recipient."  *Id.*

8      The *Tooley* test and the distinction between direct and derivative claims has

9  been analyzed mostly in the context of corporations and entities like corporations.

10  *See, e.g.*, *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 176 (Del.

11  2015) ("The case law under *Tooley* . . . and its progeny deal with the distinct question

12  of when a cause of action for breach of fiduciary duty or to enforce rights belonging

13  to the corporation itself must be asserted derivatively.").  In those circumstances, the

14  dichotomy between management of an entity by a Board, and thus, harm to the

15  entity, versus harm to an individual investor, is much more clear, because the entity

16  is truly a separate "person" from the residual owners.  This is not the case here.  The

17  Trust is basically an administrative shell, taking payments from PCEC and passing

18  them on to Unitholders, after deducting its own limited expenses.

19      The Delaware Court of Chancery (the "Chancery") has recognized that the

20  "[a]pplication of corporate law rules to disputes related to [other business structures]

21  necessitates a bit of flexibility."  *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund,*

22  *L.P.*, 829 A.2d 143, 150 (Del. Ch. 2003) (discussing limited partnership).  In *Anglo*

23  *Am.*, the court addressed whether a claim by a limited partner against a general

24  partner who allegedly failed to disclose an improper withdrawal of capital was direct

25  or derivative.  *Id.* 148.  Looking to the economic substance of the partnership fund,

26  the court acknowledged that while such claims might appear derivative on the

27  surface, in actuality they were direct because "injuries that result in a direct reduction

28

13

of the [f]und's assets will effect an almost immediate reduction in the capital accounts of each of the existing partners.  Such losses confer only a fleeting injury to the [f]und, one that is immediately and irrevocably passed through to the partners."  *See id.* at 152; *see also Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 614 (S.D.N.Y. 2015) ("Though any recovery would initially go to the trusts, it would simply pass through the trusts and be distributed to the Noteholders and Certificateholders—the trusts themselves would not retain any payments.").

The same is true of the Trust here, which a pass-through entity.  ¶¶1, 20, and 32.  Any harm to the Trust is at best fleeting, as it is passed through to Unitholders as soon as the monthly distribution date passes.  In a true derivative claim, the corporation receives the benefit of any recovery, and any distribution is subject to the discretion of the officers or directors of the corporation as with any other corporate assets.  This is not true of Trustee here, who is bound by contract to pass profit distributions through to Unitholders.  Further, because the Trust is designed to pay out all of its funds either in expenses or payments to investors, the Trust's liabilities should always match its assets.  The reduction from PCEC of monthly profits was matched by a reduction in payments to Unitholders, leaving the Trust in essentially the same position.  Finally, a Unitholder who sold its Units and thus was no longer part of the Trust would still hold these claims against PCEC, again demonstrating the individual nature of the injury.  Thus, under both prongs of the *Tooley* test, Plaintiffs' claims are direct.

## C. The Pass-Through Nature of the Trust Compels Plaintiff to Bring This Claim as a Direct Claim

Aside from *Tooley*, sometimes, like here, relationships among parties are "so simple and the circumstances so clear-cut that the distinction between direct and derivative claims becomes irrelevant."  *Anglo Am.*, 829 A.2d at 150; *see also, e.g.,*

1   *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394
2   (AJN), 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016) ("it would be absurd to ...
3   ask the Trustee to sue itself").  The Chancery has recognized that "direct claims exist
4   when the entity at issue is a mere pass-through entity and the benefits flow directly
5   back to the investors."  *Sehoy Energy LP v. Haven Real Estate Grp., LLC*, C.A No.
6   12387, 2017 WL 1380619, at *8 n. 94 (Del. Ch. Apr. 17, 2017) (citing *Anglo Am.*,
7   829 A.2d at 152-53 ("[I]njuries that result in a direct reduction of the Fund's assets
8   will effect an almost immediate reduction in the capital accounts of each of the
9   existing partners. Such losses confer only a fleeting injury to the Fund, one that is
10  immediately and irrevocably passed through to the partners.")).

11      This Trust is such a "pass-through" entity where the sole purpose of the entity
12  is to distribute profits to the Trust Unitholders.  Trust Agreement 2.04 ("the Trust is
13  intended to be a passive entity limited to the receipt of revenues . . . and the
14  distribution of such revenues . . . to the Trust Unitholders").  The Trustee's role is
15  administrative, and the Trust has no other purpose other than to benefit the
16  Unitholders.  The Trust is not a corporation — this is not like when board members
17  breach their fiduciary duties **to the corporation** and shareholders of that corporation
18  seek to recover for that breach **to the corporation**.  Here, as discussed above, there
19  is no real harm to the Trust, it is the Unitholders who are damaged.

20      PCEC's reliance on *Hartsel* and *Protas* are inapposite because, while they
21  involved Delaware statutory trusts, those cases also involved entities that are **not**
22  passive pass-through entities such the Trust here.  Moreover, *Hartsel* and *Protas*
23  involved claims against boards of trustees for their investment decisions that affected
24  either the assets of the Trust or of classes of trust units.  *Hartsel v. Vanguard Group,*
25  *Inc.*, C.A. No. 5394, 2011 WL 2421003, at *1 (Del. Ch. June 15, 2011) (noting
26  plaintiffs sued various defendants, "including the board of trustees overseeing the
27  two Vanguard Delaware statutory trusts whose funds purchased such shares");
28

*Protas v. Cavanagh*, C.A. No. 6555, 2012 WL 1580969, at *1 (Del. Ch. May 4, 2012) (noting that "thirteen independent directors" are among the "Trustee Defendants"). Such claims are clearly derivative. By contrast, Plaintiff's claim here against PCEC has nothing to do with management of the Trust. Moreover, the Trust has no board of directors or board of trustees, and the Trustee does ***not*** undertake management decisions for the Trust; in fact, it is forbidden to do so. ECF No. 15-2 at 13 (Trust Agreement at §3.03: "No Power to Engage in Business or Make Investments or Issue Additional Securities."). Rather, the sole purpose of the Trust is to take the profits of the Conveyed Interests and distribute them, *pro rata*, to Trust Unitholders, and the Trustee's role in this regard is administrative. Thus, the Trust here has a different form and function from the ones in *Hartsel* and *Protas*, and the claim here is very different; as a result, their legal holdings pertaining to the derivative-direct distinction do not apply here.

Here, Plaintiff's claim against PCEC had to be brought as a direct claim "in order to enable the injured parties to recover while preventing a windfall to individuals or entities whose interests were not injured." *Anglo Am.*, 829 A.2d at 151. In addition to noting the special nature of pass-through entities, the *Sehoy* court also considered that "based on the fundamental pass-through nature of the entity involved, and the fact that, if recovery ran to the entity, new investors – who had not been harmed by the wrong at issue – would nonetheless share in the recovery." *Sehoy*, 2017 WL 1380619, at *8. The same is true here. Any recovery in a derivative action would simply increase the assets of the Trust at the time any damages were recovered. Consequently, if a derivative suit is successfully prosecuted all current Unitholders would participate in the recovery by the Trust, even if they were not shareholders during the relevant time period, and injured former shareholders would not necessarily participate in the recovery at all. This result cannot stand and thus a direct claim is the most appropriate way for Plaintiff to recover. *See Northstar Fin.*

16

*Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1060 (9th Cir.), as amended on denial of reh'g and reh'g *en banc* (Apr. 28, 2015).

In sum, Plaintiff has stated a direct claim against PCEC.

## V.   The Impending Dissolution Further Illustrates Direct Harm to Trust Unitholders

As the Trust and Trustee have repeatedly forecast, PCEC's wrongful conduct will lead to the dissolution of the Trust in less than two years.  In a dissolution proceeding, the value of the Trust Units will likely be further impaired in what would amount to a forced sale.  This is also a direct harm to Trust Unitholders because they will be forced to tender their shares at an unfair price, and the right to receive a fair price for one's shares is a direct contractual right.  *See CMS Inv. Holdings, LLC v. Castle,* C.A. No. 9468, 2015 WL 3894021, at *8 (Del. Ch. June 23, 2015) (plaintiffs assert a direct claim where "the Complaint alleges that the Individual Defendants purposefully engineered the dissolution of [the company] in order to disloyally purchase its only valuable assets out of receivership . . . . in which in which the Class A unitholders essentially were squeezed out for less than fair value").  Plaintiff seeks an injunction to stop PCEC's wrongful conduct, which will mitigate or eliminate the risk of a dissolution; the benefit to preventing that dissolution, by the same token, will also inhere to Plaintiff and other Trust Unitholders directly.

## VI.   Plaintiff Has Adequately Pled a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

PCEC argues that Plaintiff has not adequately pled a claim for breach of the implied covenant of good faith and fair dealing because the conduct at issue is expressly covered by the contract.  MTD at 16.  It further argues that PCEC enjoyed complete discretion in how it calculated its costs, that is was permitted to calculate and deduct Asset Retirement Obligations (ARO) in the manner complained of, and

that Plaintiff failed to allege that PCEC acted with gross negligence or willful misconduct.  MTD at 18.  PCEC is wrong.

The implied covenant "inheres in every contract and requires a party in a contractual relationship to refrain from ***arbitrary*** or ***unreasonable*** conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009); s*ee also Dunlap v. State Farm Fire & Cas. Co*., 878 A.2d 434, 442 (Del. 2005) ("parties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms"); *Chamison v. Healthtrust, Inc.-Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999), *aff'd* 748 A.2d 407 (Del. 2000) ("This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain.").  To plead a claim for breach of the implied covenant, Plaintiff needs only to "allege facts suggesting 'from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter.'" *In re Kinder Morgan, Inc. Corp Reorganization Litig.*, C.A. No. 10093, 2015 WL 4975270, at *9 (Del. Ch. Aug. 20, 2015) (quoting *Katz v. Oak Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986)).  Plaintiff has done that.

Plaintiff's claims here arise under the Trust Agreement.  To the extent that PCEC argues that the Conveyance Agreement is incorporated into the Trust Agreement, and that PCEC has fulfilled its obligations under the latter, PCEC is incorrect.  The Conveyance Agreement includes implied obligations on the part of PCEC that it would not take underhanded affirmative steps, or permit others to do the same, to fix the calculation of PCEC's ARO to frustrate the payment of

18

distributions to Plaintiff and other members of the proposed class for any purpose, much less to enable Wood to further cement his control over PCEC.  ¶¶4, 61.  The Conveyance Agreement, like every contract, also contained an implied obligation on the part of PCEC to act in good faith in exercising the discretion afforded to it under the agreement.   PCEC breached these obligations through manifestly unreasonable and bad faith conduct that prevented Plaintiff, and other members of the Class, from receiving the benefits of the Conveyance Agreement; namely, their distributions.  Trust Unitholders had the reasonable expectation that, among other things, PCEC would neither make revenue and cost calculations in violation of GAAP and industry practices, nor starve the Trust of cash for any nefarious purpose so that it would no longer make distributions to Unitholders.

For these reasons, and those that follow, PCEC's motion must be denied.

### A. Plaintiff's Implied Covenant Claim Relating to PCEC Involves Factual Disputes that Cannot Be Resolved in a Motion to Dismiss

A breach of implied covenant claim presents "a fact-based inquiry that is not well suited for a motion to dismiss," and courts routinely deny motions to dismiss such claims.  *See Breakaway Sols., Inc. v. Morgan Stanley & Co.*, No. Civ. A. 19522, 2004 WL 1949300, at *12 (Del. Ch. Aug. 27, 2004); *see also Castle*, 2015 WL 3894021, at *16; *Renco Group, Inc. v. MacAndrews AMG Holdings LLC*, C.A. No. 7668, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015); *Bakerman v. Sidney Frank Imp. Co.*, No. Civ. A. 1844, 2006 WL 3927242, at *20 (Del. Ch. Oct. 10, 2006); *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1206 (Del. 1993) (the "reasonableness" determination in an Implied Covenant claim is a "question of fact to be determined by the finder of fact").  Indeed, in *Desert Equities*, the Supreme Court reversed the Chancery's holding (on a motion for judgment on the pleadings) that a general partner had not breached the implied covenant because

19

it exercised certain discretion afforded to it by a partnership agreement reasonably and in good faith. *Id*. at 1201, 1206, 1209. The Supreme Court held that the reasonableness of the general partner's actions was a factual matter that could not be decided on a motion for judgment on the pleadings, absent discovery and facts of record by which to discern the reasonableness of the conduct. *Id*.

Here, Plaintiff has offered numerous detailed specific allegations rather than merely made conclusory statements. The Complaint spells out plainly PCEC's breach and the damage suffered by Plaintiff and the Class, including: specific efforts by Wood, who had previously controlled and used ERG as a personal piggybank, to cement control over PCEC (¶¶43-53); PCEC's atypical end to the payment of distributions to unitholders immediately after Wood gained control over PCEC (¶54); PCEC's attempt to justify the elimination of distribution payments by baselessly claiming that total plugging and abandonment costs attributable to the Trust had swollen to nearly all the Trust's total annual costs for 2018 (¶¶58, 64); that PCEC's ARO calculations are in violation of GAAP and industry practices (¶¶4, 60); and that the Trust experienced net-profit deficit amounts likely to eliminate distributions to Unitholders for several years to come (¶¶64-66). And Plaintiff has alleged that this happened while PCEC continued to collect significant fees. ¶69. Accordingly, PCEC cannot legitimately contend that Plaintiff's claims are simply conclusory.

PCEC is the one that offers conclusory statements in support of its argument that the Conveyance Agreement allows it to calculate the costs it has "accrued" and that it need only act as a "reasonably prudent operator." MTD at 17-18. But this is of no moment because whether PCEC has done so is a ***factual*** dispute, again underscoring that this case is not ripe for dismissal on the pleadings. Plaintiff seeks to prove that PCEC has in fact ***not*** "accrued" or accounted for costs in a way

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR
ALTERNATIVELY, COMPEL ARBITRATION

1  consistent with industry practice or with GAAP, and has **not** acted as a "reasonably

2  prudent operator."  To resolve whether PCEC has **in fact** met the standards that the

3  Agreements subject it to requires expert and factual discovery, and these are matters

4  that are not appropriate for resolution on a motion to dismiss.  At this stage, Plaintiff

5  is entitled to all factual inferences.

6                **B.    Plaintiff's Claim Relating to PCEC Is Properly an
                         Implied Covenant Claim Because the Trust and
7                        Conveyance Agreements Do Not Define Key Terms**

8        PCEC asserts that Plaintiff cannot bring an implied covenant claim because

9  the Conveyance Agreement expressly gives it discretion to calculate "accrued" costs

10  based on what a "reasonably prudent" investor would do.  MTD at 17-18.  To begin

11  with, Plaintiff's claims are under the Trust Agreement rather than the Conveyance

12  Agreement.  PCEC ignores Plaintiff's arguments regarding the terms of the Trust

13  Agreement, in favor of making an argument entirely reliant on PCEC's rights under

14  the Conveyance Agreement.  Thus, PCEC waives any argument as to whether the

15  Trust Agreement on its own terms implies that the parties must act in good faith.

16  *Thor Merritt Square*, 2010 WL 972776, at *5 ("The failure to raise a legal issue in

17  an opening brief generally constitutes a waiver of the ability to raise that issue in

18  connection with a matter under submission to the court.").

19        To the extent PCEC's argument depends on incorporating the terms of the

20  Conveyance Agreement into the Trust Agreement, the former does not supply the

21  express terms to address Plaintiff's claims.  The Conveyance Agreement does not

22  speak to how PCEC is supposed to calculate accrued costs, what constitutes

23  "accrued" costs, why PCEC elected to include accrued costs at the time and in the

24  manner it did, and whether the specific conduct alleged in the Complaint would be

25  that undertaken by a "reasonably prudent investor."  That is, the Conveyance

26  Agreement is silent as to the actual conduct complained of.  Simply because the

27  Conveyance Agreement may have allowed PCEC to recognize certain accrued costs,

28                                            21

it does not logically follow that PCEC could therefore recognize **any** costs so long as they simply characterized them as accrued.  Indeed, if the parties had intended for that result, they could have negotiated such a provision and included it in the Conveyance Agreement.  The parties did not do so.  Standing alone, this constitutes a gap in the Conveyance Agreement that gives rise to an actionable implied covenant claim.  *C.f. Amirsaleh v. Bd. of Trade of New York, Inc.*, C.A. No. 2822, 2008 WL 4182998, at *1 (Del. Ch. Sept. 11, 2008) ("No contract, regardless of how tightly or precisely drafted it may be, can wholly account for every possible contingency.").

Filling in terms of a contract is the *sine qua non* of a claim for breach of the implied covenant of good faith and fair dealing as "even the most carefully drafted agreement will harbor residual nooks and crannies for the implied covenant to fill." *Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 441 (Del. Ch. 2012), rev'd on other grounds by 68 A.3d 665 (Del. 2013); *Id*. at 440 ("Under Delaware law, a court confronting an implied covenant claim asks whether it is clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith-had they thought to negotiate with respect to that matter.").  For purposes of a motion to dismiss, where inferences must be drawn in favor of the Plaintiff, it is therefore plausible that, given the importance to Unitholders of maintaining (or enhancing) the value of their Units and receiving distributions, they would have negotiated for language preventing the exact type of conduct that is alleged in the Complaint.

### C.    PCEC Breached the Implied Covenant in Abusing the Discretion Afforded to It

Realizing as much, PCEC then asks the Court to ignore the multitude of bad faith conduct pled in the Complaint and interpret the Conveyance Agreement to confer total and unfettered discretion upon them with respect to the calculation of

22

1   ARO costs due to a single, and, according to PCEC, catchall term in §4.2 of the
2   Conveyance Agreement – "accrued."  MTD at 18.

3   However, just because the Conveyance Agreement allows some discretion
4   does not mean that the agreement allows PCEC to abuse that discretion, which it has
5   done through calculating costs in violation of GAAP and industry standards.  *See In
6   re Encore Energy Partners LP Unitholder Litig.*, C.A. No. 6347, 2012 WL 3792997,
7   at *12 (Del. Ch. Aug. 31, 2012) ("[W]hen a contract confers discretionary rights on
8   a party, the implied covenant requires that party to exercise its discretion
9   reasonably."); *Policemen's Annuity & Benefit Fund of Chi. v. DV Realty Advisors
10  LLC*, C.A. No. 7204, 2012 WL 3548206, at * 12 (Del. Ch. Aug. 16, 2012) (noting
11  that "the implied covenant requires that the [contractual] discretion be used
12  reasonably and in good faith."); *Amirsaleh*, 2008 WL 4182998, at *1 ("[T]he law
13  presumes that parties never accept the risk that their counterparties will exercise their
14  contractual discretion in bad faith.").   PCEC was implicitly required to act
15  reasonably and in good faith when calculating costs, especially costs that would have
16  a direct impact on PCEC's profits and how much (or whether) the Trust would be
17  able to distribute money to Unitholders as expected.  PCEC failed this low standard
18  and grossly abused position right by, among other things, improperly pulling up
19  costs that had not been incurred (¶61), by characterizing these costs as purportedly
20  "accrued" without any explanation as to how or why (¶70), and by deducting these
21  costs precisely when the oil market collapsed, which hastened the Trust's financial
22  collapse (¶71).

23  At the motion to dismiss stage, courts have routinely found that similar or
24  lesser abuses of contractual rights ran afoul of the implied covenant.  *See, e.g.*,
25  *Dieckman v. Regency GP LP*, 155 A.3d 358, 367–68 (Del. 2017) (false disclosures
26  in proxy statement violated implied covenant); *In re CVR Refining LP Unitholder
27  Litig.*, Consol. C.A. No. 2019-0062, 2020 WL 506680, at *15 (Del. Ch. Jan. 31,
28

1    2020) ("[I]t is reasonably conceivable that implied in the language of the Call Right

2    provision is a requirement that defendants not act to undermine the protections

3    afforded to unitholders by price-protection mechanisms."); s*ee also Keating v.*

4    *Applus Techs., Inc.*, 2009 WL 261091, at *4 (E.D. Pa. Feb. 4, 2009) (finding breach

5    of implied covenant where purchasers delayed signing contract to avoid making

6    earnout payments, and stating, "[u]nder Delaware law, Applus cannot avoid its

7    contractual obligations by creating, in bad faith, an outcome that technically satisfies

8    the express terms of the SPA, but deprives plaintiffs of their legitimate

9    expectations").

10        Thus, Plaintiff has met its burden and stated a claim against PCEC upon which

11   relief can be granted.

12   **CONCLUSION**

13        This Court should remand this Action to state court, and deny the Motion to

14   Dismiss as moot.   In the alternative, this Court should deny PCEC's Motion to

15   Dismiss in its entirety for the reasons herein.

16   DATED: September 15, 2020          **SCOTT+SCOTT ATTORNEYS**
                                        **AT LAW LLP**

17

18

19                                     */s/ John T. Jasnoch*
                                       JOHN T. JASNOCH (281605)

20                                     jjasnoch@scott-scott.com
                                       600 W. Broadway, Suite 3300

21                                     San Diego, CA 92101
                                       Telephone: 619-233-4565

22                                     Facsimile:  619-233-0508

23                                     **SCOTT+SCOTT ATTORNEYS**
                                       **AT LAW LLP**

24                                     THOMAS L. LAUGHLIN, IV
                                       tlaughlin@scott-scott.com

25                                     (*Pro hac vice forthcoming*)
                                       JING-LI YU

26                                     jyu@scott-scott.com
                                       (*Pro hac vice*)

27                                     The Helmsley Building
                                       230 Park Avenue, 17th Floor

28   24

---

OPPOSITION TO PACIFIC COAST ENERGY COMPANY LP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR
ALTERNATIVELY, COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334

*Counsel for Plaintiff Evergreen
Capital Management LLC*

25

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on September 15, 2020, I caused the foregoing to be

3 electronically filed with the Clerk of the Court using the CM/ECF system which will

4 send notification of such filing to the email addresses denoted on the Electronic Mail

5 Notice List.

6

I certify under penalty of perjury under the laws of the United States of

7 America that the foregoing is true and correct.  Executed on September 15, 2020.

8

9
10
11
12
13

  s/ John T. Jasnoch
John T. Jasnoch
jjasnoch@scott-scott.com
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26